428 So.2d 637 (1983)
Roy A. CATES, et al.
v.
James K. TAYLOR and Joyce Taylor.
81-250.
Supreme Court of Alabama.
March 11, 1983.
*638 Leo E. Costello of Costello & Stott, Birmingham, for appellants.
Danny D. Henderson and L. Ann Grace, Huntsville, for appellees.
ADAMS, Justice.
This appeal involves an action under the torts of outrage and invasion of privacy. Roy A. Cates, along with his two brothers and sisters, (plaintiffs), sued James K. Taylor and Joyce Taylor (defendants). Plaintiffs contend defendants refused to allow them to bury their father in a cemetery lot which defendants gave them for that purpose. The Circuit Court for Madison County granted defendants' motion for summary judgment after considering a supporting affidavit and the parties' depositions. From that judgment, plaintiffs appealed.
Two issues, and the questions posed thereby, are dispositive of this appeal. They are:
1. Was there a scintilla of evidence to support plaintiffs' cause of action for invasion of privacy?
2. Was there a scintilla of evidence to support plaintiffs' cause of action under the tort of outrage?
We answer the first in the negative, and the second in the affirmative. Therefore, we affirm in part, reverse in part, and remand.
Viewed most favorably to plaintiffs, the supporting affidavit and depositions showed the following. In 1973, plaintiffs' mother died. She was defendant Joyce Taylor's sister. Defendants orally gave plaintiffs one of their twelve cemetery lots for her burial. Although denied by defendants, plaintiffs testified that, at the same time, defendants gave them a lot for their father, who was still living. There was no written transfer of ownership to the lots. Plaintiffs buried their mother in the lot given for that purpose, and placed a "double" tombstone across it and the lot next to it.
Plaintiffs' father died on Saturday, January 17, 1981. Plans were made for the funeral to be held Monday, January 19, 1981, at 11:00 a.m. Plaintiffs made arrangements to bury their father next to their mother in the other lot. Defendants learned of the death on Saturday, but not from plaintiffs. Defendant Joyce Taylor tried to reach plaintiffs through the cemetery director by leaving word for them to contact her. She received no response. On Monday morning she drove to the cemetery and observed the grave being opened in the other lot. Defendant telephoned the funeral home at approximately 10:30 a.m. The funeral procession was lining up to leave for the cemetery at that time. She threatened legal action if plaintiffs' father was buried in the lot. Learning of this development, plaintiff Phyllis Hatley tried to telephone defendant Joyce Taylor at her home. When Hatley could not reach her, she spoke to defendant James Taylor. He explained that Joyce's feelings were hurt because no one had called her. He informed Hatley that plaintiffs could use the lot if they secured Joyce's permission. Defendant declined to give permission himself, stating that Joyce had to make the decision. He provided Hatley with no information with which she could locate Joyce.
As a result, the graveside services had to be conducted at an undug grave. Plaintiffs were forced to secure another lot in the cemetery for their father's burial. The next day, plaintiffs attempted to reinter their mother's remains next to their father. The cemetery advised them that they needed defendants' permission. Hatley secured it, and plaintiffs' mother's remains and tombstone were moved and placed next to the lot in which the father was buried.
Plaintiffs seek to recover the costs of moving the tombstone and the remains of their mother. They also claim damages for invasion of privacy, severe emotional distress, *639 and bodily harm. Plaintiffs theorize that defendants' conduct, by interfering with the funeral, constituted an invasion of privacy. Under the tort of outrage they theorize that defendants' conduct went beyond all bounds of decency, and thereby also constituted an actionable wrong under that alternative theory. They contend, under both theories, that defendants intentionally waited until 30 minutes before the funeral so as to inflict mental anguish on them. They variously complain that they have suffered from sleeplessness and from weight loss; crying and nervousness; and embarrassment and humiliation due to the questioning by friends and family regarding the events of the funeral.
The standard of review for a grant of summary judgment is well established.
In determining whether a summary judgment is proper, the ultimate question is whether there remains a genuine issue of material fact, and if there is one, summary judgment is inappropriate, Rule 56(e), ARCP; 6 Moore's Fed.Prac, par. 56.15 (2nd ed. 1971). Put in another way, "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."

First National Bank of Birmingham v. Culberson, 342 So.2d 347, 351 (Ala. 1977). More recently, the court observed in Campbell v. Alabama Power Co., 378 So.2d 718, 721 (Ala.1979), that the scintilla evidence rule applies to summary judgment motions:
This rule must be considered in the context of the scintilla evidence rule applicable in Alabama. Thus, if there is a scintilla of evidence supporting the position of the party against whom the motion for summary judgment is made, so that at trial he would be entitled to go to the jury, a summary judgment may not be granted. Donald v. City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92 (1976). Furthermore, all reasonable inferences from the facts are to be viewed most favorably to the non-movant. Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976).
Harold Brown Builders, Inc. v. Jordan Company, 401 So.2d 36 at 37-8 (Ala.1981). These principles we will apply in our review of this appeal.
We find plaintiffs' claim for invasion of privacy to be without merit. Acts constituting an invasion of privacy have been previously set out by this Court:
It is suggested in Prosser, Law of Torts 637-39 (2nd ed. 1955), that the invasion of privacy tort consists in fact of four distinct wrongs, (1) "the intrusion upon the plaintiff's physical solitude or seclusion," (2) "publicity which violates the ordinary decencies," (3) "putting the plaintiff in a false but not necessarily defamatory position in the public eye," and (4) "the appropriation of some element of the plaintiff's personality for a commercial use." We think this analysis fundamentally consistent with our statement in the Doss case and reaffirmed in the Abernathy case, adopted from 41 Am.Jur. 925, that the right of privacy is "`the right of a person to be free from unwarranted publicity,' or `the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'" [Emphasis in original.]
Norris v. Moskin Stores, Inc., 272 Ala. 174 at 176-7, 132 So.2d 321 at 323 (1961).
Although defendants' alleged actions, as a consequence, caused plaintiffs to suffer embarrassment, humiliation, and other claimed injuries, we cannot find that they fall within any of the above categories constituting an invasion of privacy. Defendants' actions may have caused damages similar to those which might be experienced from an act constituting an invasion of privacy. Nevertheless, the similarity of resultant damages does not mean that plaintiffs, therefore, have a cause of action for *640 invasion of privacy. Plaintiffs offer no explanation as to how the alleged facts of this case fall within one of the four categories of conduct constituting an invasion of privacy as explained in Norris v. Moskin Stores, Inc., supra, and indeed, we can perceive of none. Therefore, insofar as plaintiffs' alleged cause of action for invasion of privacy is concerned, the trial court properly granted defendants' motion for summary judgment.
Next, we consider the propriety of the trial court's grant of summary judgment as it pertains to plaintiffs' alleged cause of action under the tort of outrage. To be actionable under the tort of outrage, the conduct involved must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and ... be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Company v. Inmon, 394 So.2d 361 at 364 (Ala.1980) (quoting Restatement (Second) of Torts § 46, comment d, at 73 [1965]). This court described the tort as:
The intentional or reckless tort of outrageous conduct causing severe emotional distress, as proposed by the American Law Institute's Restatement (Second) of Torts § 46 (1948):
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
American Road Service Company v. Inmon, at 362.
If the facts, as testified to by plaintiffs, are true, plaintiffs have stated a cause of action. A funeral is an observance laced with sorrow and personal grief. Defendants' alleged actions, including waiting until 30 minutes before the graveside services so as to disrupt the funeral and thereby air the matter of Joyce Taylor's hurt feelings, fit the requirement of an act "beyond all possible bounds of decency" and "atrocious and utterly intolerable." American Road Service Company v. Inmon, supra. We agree with plaintiffs' argument that defendants acted at the worst possible time. It undoubtedly destroyed the solemnity of the occasion and subjected plaintiffs to the necessity of securing another lot, with the attendant embarrassment and humiliation before the approximately 100 persons in attendance. The alleged act, causing disruption of a funeral due to hurt feelings, is clearly an act of "extreme" and "outrageous" conduct, proscribed by American Road Service Company v. Inmon.
Defendants dispute the claim that they gave the second cemetery lot to plaintiffs for the eventual burial of their father. In the alternative, they argue that even if they gave it to plaintiffs, because title to a cemetery lot cannot pass orally, their alleged actions on the day of the funeral effected a revocation of the gift. Either way, they argue that, as legal owners of the cemetery lot, they could insist upon their legal right to prevent plaintiffs from burying their father there. It is unnecessary for us to reach the issue of in whom title to the lot vested. Defendants' argument is based on the principle that one who asserts his legal rights in a permissible way, even though the assertion is certain to cause emotional distress, does not, thereby, incur liability. American Road Service Company v. Inmon, at 3368 (citing Restatement, supra, § 46, comment g at 76). As an illustration, the Restatement provides the example of a landlord who knows a family is destitute, but nevertheless insists on payment of the rent and threatens eviction if payment is not made. Restatement, supra, § 46, comment g, illustration 14 (1965). Utilizing that illustration as a guide, no analogy can be made to defendants' alleged actions to shield them from liability. Plaintiffs testified, and contend, that defendants made a gift of both lots to them. If true, defendants' subsequent conduct by allegedly preventing the burial of plaintiffs' father would be actionable under the tort of outrage. They cannot bring about plaintiffs' predicament, and then seek to shield themselves behind their claim of legal title to the *641 disputed lot. We cannot perceive the facts in the present case as falling within the scope of protection afforded under § 46, comment g.
Lastly, we reject defendant James Taylor's argument that summary judgment was properly granted as to him, even if it was not properly granted as to his wife, Joyce Taylor. The facts which we have outlined above would support a reasonable inference that James Taylor also participated in the alleged outrageous conduct, along with his wife. We find no merit to his argument.
For all of the foregoing reasons, we find it necessary to reverse and remand the trial court's grant of summary judgment as it applies to plaintiff's cause of action under the tort of outrage.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and MADDOX, J., concur specially.
TORBERT, Chief Justice (concurring specially).
The appellees argue at length that they had legal title to the lot in question and that they were merely exercising their legal rights in refusing to allow the burial of plaintiffs' father on their lot.
First, I am of the opinion that defendants did not have legal title, as such, to the lot in question. This Court has repeatedly stated that the right to bury the dead in a cemetery lot does not represent fee simple ownership of the property.
"One who buys the privilege of burying his dead kinsmen in a public cemetery thereby acquires no general right of property.... He does not acquire, in the strict sense, an ownership of the ground; all that he does acquire is a right to use the ground as a burial place."
Smith & Gaston Funeral Directors, Inc. v. Dean, 262 Ala. 600, 605, 80 So.2d 227, 230 (1955).
In defining the nature of the interest a party has on "purchasing" a lot, the courts of our state have said,
"The purchaser of a lot in a public cemetery only acquires a privilege or license to make interment, and although a deed absolute in form is given, the purchaser does not acquire title to the soil."
Union Cemetery Co. v. Alexander, 14 Ala. App. 217, 220, 69 So. 251, 253 (1915). Since we have held that the "ownership" right in a cemetery lot is only a privilege or a license, it would follow that a parol gift of the right to use the lot could be made. Thus in the case before us, it appears there was a genuine issue regarding the alleged parol gift of the use of the cemetery lot, and the respective rights of the parties in relation to the lot.
Furthermore, I am of the opinion that the defendants would be required to give the plaintiffs reasonable notice that they could not use the lot to bury their father. Messer v. City of Birmingham, 243 Ala. 520, 10 So.2d 760 (Ala.1942). Again, it appears to me that a genuine issue of material fact existed concerning the allegations of outrageous conduct by the defendants in relation to the manner in which notice was given.
MADDOX, J., concurs.