This case requires us to examine the type of conduct constituting the tort of outrageous conduct, and to ascertain whether plaintiff produced evidence sufficient to avoid a directed verdict on certain claims submitted to the jury.
Plaintiff Pamela Geary sued defendant Empiregas after that company failed to return an LP gas regulator it had removed from her tank. These claims went to the jury: (1) breach of contract; (2) conversion; (3) fraud; (4) negligence and wantonness; and (5) outrageous conduct. Empiregas moved for directed verdicts separately and severally on each count at the end of trial. After the motions were overruled, the jury returned a $25,000 general verdict for Mrs. Geary.
Empiregas contests the submission to the jury of the conversion and outrageous conduct claims. More specifically, Empiregas contends that the evidence is insufficient to support those counts; therefore, given the general verdict, the company maintains that it is entitled to a new trial on the entire case. Indeed, if the evidence is insufficient on either theory, Empiregas is entitled to JNOV on that claim and a new trial on the remaining claims supported by the evidence. Ex parte Nix, Ala., 401 So.2d 64 (1981).
We find sufficient evidence from which permissible inferences could be drawn to support conversion, but not of outrageous conduct; thus we reverse the judgment.
 I. FACTS
Mrs. Geary rented an LP gas tank and regulator from Empiregas and purchased gas from the company under an exclusive purchase agreement. The gas purchase and equipment rental agreement reads in pertinent part:
 "1. That until this agreement be terminated as herein provided, [Empiregas] agrees to sell and [Mrs. Geary] agrees to purchase from [Empiregas], all of the gas as may be required by [Mrs. Geary] to operate all gas consuming equipment as [Mrs. Geary] is now or may hereafter be using. It is understood by the parties that the gas to be furnished by [Empiregas] and the gas to be used by [Mrs. *Page 1260 
Geary], is commonly known as liquefied petroleum gas. . . .
". . .
 "8. [Mrs. Geary] shall be deemed to have breached this agreement upon the happening of any one or more of the following events: (A) Failure of [Mrs. Geary] to purchase from [Empiregas] during any twelve-month period, a quantity of liquefied petroleum gas equal to at least twice the gallonage capacity of the tank rented herein; (B) Failure of [Mrs. Geary] to pay [Empiregas] any accounts due for gas purchased within thirty (30) days after date of delivery; (C) Default, breach of non-performance by [Mrs. Geary] of any of the terms and conditions of this agreement. . . . Upon the happening of any one or more of said events, [Empiregas] may terminate this agreement immediately without any notice to [Mrs. Geary] by removing its equipment. . . .
". . .
 "10. . . . It is further understood and agreed by the parties hereto that as part of the consideration for this agreement [Empiregas], its agents and employees, shall have the immediate right upon any termination of this agreement to go upon the premises of [Mrs. Geary] and take possession of said rented property and remove the same from the premises without process of law, and [Mrs. Geary] hereby wavies any trespass or right of action for damages by reason of said entry and removal. . . ."
Mrs. Geary used up her gas in September 1980 and could not afford to purchase more. The Church of Love discovered her situation and had LP gas, purchased from a competing company without her knowledge, placed in the tank. An Empiregas employee removed the regulator in December upon discovery of this purchase during a routine tank check. Mrs. Geary, finding her heat off, called Empiregas on December 11 and was informed the company removed her regulator because she bought gas from another company. After Mrs. Geary explained that the gas was donated by the church, Empiregas promised to return the regulator that evening. She sat up that night until 11:30 waiting for someone to arrive, but the regulator was not returned.
Mrs. Geary called Empiregas the following morning to discuss the delay, whereupon the company apologized and reassured her the regulator would be delivered shortly. When Empiregas did not deliver the regulator that day either, Mrs. Geary again called to complain of the cold and to inquire when the regulator would be returned. The calls and failure to deliver the regulator persisted over a nine-day period during bitterly cold weather. Each time Mrs. Geary phoned the company, the employee who answered apologized and gave repeated assurances the regulator would be returned right away.
Mrs. Geary finally obtained a regulator through her brother on December 20. Until this time, Mrs. Geary could not cook for her children, and the temperature in her house fell below freezing. Despite her efforts to keep warm by huddling on the couch and bed with her children, they all suffered severely and became ill.
 II. THE CONVERSION COUNT
Proper submission of a conversion count to a jury requires a plaintiff to produce evidence from which reasonable jurors could infer "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse" of plaintiff's property or rights in property. Ott v. Fox, Ala., 362 So.2d 836, 839 (1978).
Empiregas argues that it exercised a legitimate contractual right when it removed its regulator from its gas tank, and cannot be guilty of conversion where it retrieved possession of its own property. Empiregas converted, if anything, the regulator itself. The parties dispute whether the removal was contractually authorized. In any case, ownership by the converter does not prevent a conversion. Conversion lies where there has been "wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where *Page 1261 
said plaintiff has . . . the immediate right to possession."Ott v. Fox, supra.
We need not decide whether the contract authorized Empiregas to enter upon Mrs. Geary's property and remove the regulator. The company's subsequent conduct is sufficient basis for finding that Mrs. Geary had a right to immediate possession which was subject to conversion. Russell-Vaughn Ford, Inc. v.Rouse, 281 Ala. 567, 206 So.2d 371 (1968). In other words, once Empiregas became aware of the reasons the gas was purchased elsewhere, and no longer persisted in the position that her breach terminated the contract, then the further retention of the regulator could have constituted conversion. Reasonable jurors could infer that retention of the regulator for nine days after Empiregas promised to immediately return it constituted a wrongful detention or interference with Mrs. Geary's possessory interest. Thus, the trial court did not err in submitting the conversion claim to the jury.
 III. OUTRAGEOUS CONDUCT
Proper submission of this count to a jury requires sufficient evidence from which permissible inferences could be drawn to support a finding of the extreme conduct necessary to constitute outrageous conduct. In order to resolve this issue, we must consider the definition of this tort adopted inAmerican Road Service Co. v. Inmon, Ala., 394 So.2d 361 (1980), and as applied in Peddycoart v. City of Birmingham, Ala.,392 So.2d 536 (1980).
In Inmon, quoting from § 46 of the Restatement (Second) of Torts (1948), this Court defined the tort:
 "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
The conduct referred to in that definition must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."Inmon at 365.
Aside from some doubt concerning the proof of the other elements of the tort of outrageous conduct it is clear that the conduct of Empiregas did not rise to the level of "beyond all possible bounds of decency" and "utterly intolerable in a civilized society." Plaintiff complains primarily of the inaction of Empiregas after its assurance of action. Under the circumstances, whether that inaction was due to mistake or internal negligence, still it did not meet the test of outrageous conduct as our decisions and Restatement (Second) ofTorts § 46 have considered it. Compare Inmon, supra; Peddycoartv. City of Birmingham, supra.
For the reasons stated the judgment of the trial court is reversed and this cause is remanded to that court for further proceedings. It is so ordered.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
JONES, J., concurs in part and dissents in part with opinion in which FAULKNER, J., concurs.