JONES, Justice.
This case arose from a conflict between Plaintiffs, owners of undivided one-half interests in real estate, and Defendants, purchasers of the real estate sold at a sheriff’s sale to satisfy a judgment against one of the Plaintiffs. Plaintiffs, after an unsuccessful eviction suit brought by Defendants, sued Defendants for damages allegedly arising from Defendants’ conduct regarding redemption of the property.
The case was submitted to the jury on two theories: 1) tort of outrage; and 2) malicious prosecution. The jury returned general verdicts against both Defendants, and in favor of each Plaintiff, for $20,000. Defendants, raising issues of insufficiency of the evidence as to each claim and juror misconduct, appeal from denial of their JNOV, new trial, and remittitur motions. Because we reverse and render as to the tort of outrage claim and remand the cause for a new trial solely on the malicious prosecution claim, we do not address the juror misconduct issue.
Plaintiffs Dan and Dale McAllister owned a house jointly with right of surviv-orship. In February 1981, Alabama Concrete Company obtained a $411 judgment against Dan McAllister. The sheriff sold Dan McAllister’s interest in the house on May 11,1981, to satisfy the judgment. Defendants Thomas and Carol Edwards bought that interest at the sheriff’s sale.
Shortly thereafter, Thomas Edwards learned the mortgage on the house was in arrears, and that the mortgage company planned to foreclose. Mr. Edwards made *75 arrangements to pay the mortgage indebtedness, in addition to a tax indebtedness recorded against the property. Mr. McAl-lister contacted Mr. Edwards within ten days of the sale and made offers to redeem the property. Mr. Edwards declined the offers, which ranged from five hundred to eight hundred dollars, contending they were too low.
After the Edwardses recorded the sheriff’s deed on June 11, 1981, they wrote a letter to the mortgagee of the property, enclosing payment for overdue mortgage payments and transfer fee, and also enclosing a copy of the deed for the mortgage company’s evaluation. On the same day, the Edwardses sent a letter to the McAllis-ters asking them to vacate the premises.
The record contains evidence of much correspondence among the Edwardses, McAllisters, and the mortgage company regarding the mortgage, insurance on the property, and what items required payment for redemption. The substance of this correspondence reveals: 1) the Edwardses and the mortgage company erroneously believed the Edwardses acquired full interest in the property from the sheriff’s sale; 2) the parties disputed what payment was sufficient to redeem the property; and 3) although the McAllisters offered to pay the mortgage payments made by the Edwards-es, the probate filing fee, the mortgage transfer fee, and the purchase money paid to the sheriff, plus interest on these amounts, the Edwardses demanded a far greater sum.
The Edwardses brought an eviction suit on July 6, 1981, against the McAllisters. While this suit was pending, the McAllisters filed affidavits stating Dale McAllister owned an undivided one-half interest in the property, and that Dan McAllister was staying on the property as Dale’s lessee. The eviction suit came to trial on July 27, 1981, and the district court resolved the dispute in favor of the McAllisters. On the same day, but prior to the district court hearing, the McAllisters filed the instant suit in circuit court. Plaintiffs’ lawyer, having previously been appointed as special process server, served the Edwardses in court immediately after the district judge announced his finding.
The parties settled, by voluntary agreement, the question of Dan McAllister’s right of redemption, and Plaintiffs never vacated the premises. The part of this suit dealing with redemption issues was dismissed on December 15, 1981, and, therefore, does not arise on appeal.
Absent the juror misconduct issue, the issue becomes whether, given the timely motions for directed verdicts, separately and severally, on the tort of outrageous conduct and malicious prosecution claims, sufficient evidence existed to withstand the directed verdict motion on either or both claims submitted to the jury. If the evidence is insufficient on either theory, Defendants are entitled to JNOV on that claim and a new trial on the remaining claim, if any, supported by the evidence. Ex parte Nix, 401 So.2d 64 (Ala.1981).
After careful study of the record, we find insufficient evidence to support the tort of outrageous conduct claim under the principles set forth in Empiregas, Inc. v. Geary, 431 So.2d 1258 (Ala.1983). In Em-piregas, this Court enumerated the elements constituting the tort of outrage, and concluded that no sufficient evidence existed from which permissible inferences could be drawn to support a finding that defendant’s conduct rose to a level “ ‘beyond all possible bounds of decency' ” and “ ‘utterly intolerable in civilized society’ ”. 431 So.2d at 1261.
A comparison of the defendant’s conduct in Empiregas with that of the defendants in the instant case reveals that plaintiff had a much stronger case in Empiregas than in the ease at bar. In Empiregas, defendant compounded an original mistake of removing plaintiff’s gas regulator during bitterly cold weather by persistently failing to return the regulator, despite repeated requests by plaintiff and defendant’s knowledge of the extreme suffering caused by such refusal. The defendant never remedied the problem by returning the regulator.
*76 In the case at bar, however, Defendants’ original conduct — purchase at the sheriffs sale — was proper, despite any distress it may have caused Plaintiffs. Defendants eventually retracted requests for payment of unlawful redemption charges, and the parties settled the issue without Plaintiffs’ eviction. Although the primary focus in a tort of outrageous conduct claim should be upon the gravity of defendant’s conduct, rather than the results of that conduct, even the results of Defendants’ conduct in the instant case are much more remote and tenuous than the result shown by the evidence presented in Empiregas.
Because we find even less evidence of outrageous conduct here than in Empiregas, wherein defendant’s conduct was held insufficient to establish the tort, we conclude Defendants were entitled to a directed verdict or JNOV on the tort of outrageous conduct claim, the test for each motion being the same.
We do find sufficient evidence, however, regarding the malicious prosecution issue to overcome directed verdict and JNOV motions. Because Defendants instituted the eviction action, which was terminated in Plaintiffs’ favor, and because other evidence indicates the Defendants may have known, or should have known, that Dan McAllister had owned only an undivided one-half interest, a jury question is raised as to the existence of the remaining elements necessary to prevail on this theory, such as malice, lack of probable cause, causation, and damages. See Reynolds v. McEwen, 416 So.2d 702 (Ala.1982).
Accordingly, we reverse the judgment and render the cause as to the tort of outrage claim and remand the cause for a new trial on the malicious prosecution claim.
REVERSED IN PART; RENDERED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.