465 So.2d 1100 (1984)
Rhonda RICE
v.
UNITED INSURANCE COMPANY OF AMERICA; Louis Giannini, et al.
83-24.
Supreme Court of Alabama.
December 21, 1984.
Rehearing Denied February 22, 1985.
*1101 C. MacLeod Fuller, Mobile, for appellant.
Kirk C. Shaw and Edward A. Dean of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellees.
EMBRY, Justice.
Appeal from a judgment of dismissal in favor of the defendants, United Insurance Company of America (United), and Louis Giannini. We reverse in part and affirm in part.
This action began with a complaint filed by Rhonda Rice which set forth five separate causes of action. Three counts state a cause of action for emotional distress, the fourth, a cause of action for breach of employment contract, and the fifth, a cause of action for wrongful termination of employment.
The sole issue on appeal is whether the trial court appropriately dismissed the plaintiff's complaint pursuant to ARCP 12(b)(6) for failure to state claims upon which relief can be granted. In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief under some cognizable theory of law. In reviewing that issue, this court does not contemplate the likelihood of the plaintiff's prevailing on the facts; rather, all allegations are construed in the light most favorable to Rice, and all doubts are resolved in her favor. Braggs v. Jim Skinner Ford, Inc., 396 So.2d 1055 (Ala.1981); and Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

I
The first three counts in plaintiff's complaint state a cause of action for the intentional infliction of emotional distress: the tort of outrage. While Rice attempts to couch the second and third counts, respectively, in terms of wanton and negligent behavior, each count alleges actions so "oppressive, malicious, negligent and/or outrageous as to constitute intentional infliction of emotional distress." In substance, all three counts state a cause of action for the tort of outrage. Therefore, the second and third counts of plaintiff's complaint are superfluous.
Defendants allege that the facts stated in plaintiff's complaint, even if taken as true, are insufficient to invoke the theory of defendant's intentional infliction of emotional distress. In support of this argument, defendants rely primarily on the result reached by this court in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1981). In that case, the plaintiff alleged that he was wrongfully accused by his employer of taking kickbacks in the sale of certain property, interrogated regarding that accusation in a humiliating manner, and terminated without justification. This court concluded, there, that the facts generally alleged by Inmon did not rise to the tort of intentional infliction of emotional distress.
They also point to the case of Beidler v. Grace, 461 F.Supp. 1013 (E.D.Pa.1978), where the United States District Court found the plaintiff's complaint failed to state a cause of action for the tort of intentional infliction of emotional distress. There, the plaintiff-employee alleged he had been excluded from certain meetings necessary to the performance of his job, that his employer had rearranged his desk so as to annoy him, and that his employer had failed to communicate with him concerning his job performance.
Here, Rice contends that, after she informed her employer that she had become *1102 pregnant, her supervisor, Louis Giannini, organized an attempt to force her to take disability leave rather than to work throughout her pregnancy. She contends he put pressure on her husband to use his influence with her to encourage her to take disability leave, that he repeatedly falsely accused her, in the presence of co-employees and clients, of incompetence; that on numerous occasions she was ridiculed, both alone, and in the presence of co-employees, that vital business information was withheld from her, and that, eventually, she was wrongfully terminated. She contends all the above mentioned behavior was calculated to force or coerce her into voluntarily taking disability leave from work during her pregnancy. She alleges that a miscarriage she suffered one week after her job loss was a direct result of emotional distress inflicted upon her by Giannini.
The facts alleged in this case clearly distinguish it from those in Inmon and in Beidler. First, Rice alleges a pattern of activity, encompassing a period of several months. Second, defendants' alleged behavior involved a great many persons (Rice's co-workers, clients, and husband) in addition to Rice and the defendants. Third, defendants' alleged pattern of outrageous acts were directed toward plaintiff when Giannini was likely to know that severe emotional distress could have serious physical repercussions. Fourth, the outrageous actions alleged by Rice were directed toward an illegal purpose, discrimination against an employee because of sex. Such discrimination is prohibited by Title VII of the Civil Rights Act.
It is conceivable, under the facts alleged, that Rice can prove a set of facts in support of her claim of intentional infliction of emotional distress. Therefore, the trial court erred in dismissing that claim.

II
Second, defendants contend plaintiff's allegations of intentional infliction of emotional distress are subsumed by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, et seq. They rely on a line of cases which stems from Brown v. General Services Administration, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). That case stands for the proposition that, although the statute itself does not clearly address the issue, Title VII provides the exclusive remedy for employment discrimination. Brown involved a plaintiff who sued the General Services Administration seeking relief for employment discrimination under both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, et seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981. The court held that plaintiff was barred from relief under § 1981 for employment discrimination also cognizable under Title VII, basing its holding on the principle that "a precisely drawn, detailed statute preempts more general remedies." Brown, supra, at 834, 96 S.Ct. at 1968.
While we recognize the rationale in Brown, the conclusion of that case is inapplicable to the facts of this one. Plaintiff Rice pursues two separate claims on two distinct and independent rights: her right to be free from discriminatory treatment at her jobsite and her right to be free from the infliction of emotional and bodily injury caused by another person. This situation is controlled neither by Brown nor by the subsequent cases cited by defendants.
Brown does not prohibit employees who allege employment discrimination from suing on any other cause of action arising from the same facts. For example, federal employees are permitted, as a matter of course, to bring suit under both Title VII and the Equal Pay Act. Nitterright v. Claytor, 454 F.Supp. 130 (D.D.C.1978). The tort of outrage, alleged here, like the problem of unequal pay, is distinct from the wrongs to be redressed by Title VII.
Since the Brown decision was rendered, several courts have held that a § 1983 action may be brought in addition to a Title VII claim. See National Organization of Women v. Sperry Rand Corp., 457 F.Supp. 1338 (D.Conn.1978); and Curran v. Portland Superintending School Committee, *1103 435 F.Supp. 1063 (S.D.Me.1977). Under 42 U.S.C. § 1983, Civil Action for Deprivation of Rights, damages recoverable include damages for humiliation, pain and suffering, mental distress, and aggravation of injury.
Similarly, Title VII does not offer compensation to Rice for any physical and psychic damage to her which may have resulted from any outrageous acts by defendants. Nowhere does the statute itself, which speaks solely in terms of equitable relief, expressly authorize an award of any money damages other than back pay, limited to a two-year period and reduced by the amount of interim earnings. See Curran v. Portland Superintending School Committee, 435 F.Supp. 1063 (S.D.Me.1977), for a discussion of damages allowable under Title VII. We conclude Rice's cause of action for intentional infliction of emotional distress is not subsumed by Title VII.

III
Rice has not stated a claim for breach of a contract of employment. She alleges defendants "improperly, impermissibly, and illegally" discharged her. The trial court correctly determined that her employment contract, indefinite in time, was terminable at the will of either party. See, e.g., Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala.1984); Bates v. Jim Walter Resources, Inc., 418 So.2d 903 (Ala. 1982); Davis v. Marshall, 404 So.2d 642 (Ala.1981); and Bender Ship Repair, Inc. v. Stevens, 379 So.2d 594, 595 (Ala.1980).
For the reasons stated above, that aspect of the judgment dismissing the claims for breach of contract and wrongful termination of employment is affirmed. That aspect of the judgment dismissing the other claims is reversed and the case remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
MADDOX, FAULKNER, JONES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and ALMON and SHORES, JJ., concur in part and dissent in part.
TORBERT, Chief Justice (concurring in part and dissenting in part).
I agree with the majority that the claims for breach of contract and wrongful termination of employment were properly dismissed; however, I believe that the claims for the tort of outrage were also properly dismissed.
The issue is whether the complaint was sufficient to state a cause of action for the tort of outrage. I do not think it was.
Rice alleges in her complaint
"that the Defendants did repeatedly attempt to coerce Plaintiff to taking disability leave, admonished Plaintiff in the presence of co-employees that Plaintiff could no longer perform her duties, harassed Plaintiff both alone and in the presence of co-employees to make her appear and feel incompetent, ridiculed Plaintiff both alone and in the presence of co-employees, harassed, humiliated, ridiculed or cast aspersions upon the Plaintiff in the presence of sales clients in order to adversely affect her work performance, withheld vital business information from the Plaintiff in order to adversely affect her work performance, eventually terminated Plaintiff's employment, and following Plaintiff's termination failed or refused to provide job and performance-related information necessary for Plaintiff to acquire other employment, failed or refused to provide Plaintiff with her W-2 forms in a timely fashion so as to delay Plaintiff's filing her 1981 income tax returns, failed or refused to pay Plaintiff the full amount of the sales accounts due her at termination, unjustifiably withheld payment from Plaintiff's net earnings."
The majority recites the pertinent facts in two cases similar to the present case, American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1980), and Beidler v. Grace, *1104 461 F.Supp. 1013 (E.D.Pa.1978). The plaintiff was not permitted to recover for the tort of outrage in either of those two cases. In Cushing v. General Time Corp., 549 F.Supp. 768 (N.D.Ala.1982), the employee was threatened with termination, accused of malicious gossip, talked to in an ugly way, and suspended; nevertheless, the court granted the employer's motion for summary judgment on the tort of outrage count.[1] The holdings in these cases must govern the case at hand.
In Inmon, we recognized that the tort of outrage consists of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." 394 So.2d at 365 (citing Restatement (Second) of Torts § 46, Comment (d) (1965)).
Section 46, Comment (d), Restatement, supra, limits the extent of liability:
"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind."
Section 46, Comment (h), Restatement, supra, provides for judicial control in determining which emotional distresses are actionable:
"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."
Only in two cases has this Court found sufficient allegations to state a cause of action for the tort of outrage. In Cates v. Taylor, 428 So.2d 637 (Ala.1983), the defendants were alleged to have refused to allow the plaintiffs to bury their father in a cemetery lot which the defendants had given them for that purpose. As a result of the defendants' refusal, graveside services had to be conducted at an undug grave, the plaintiffs had to secure another lot for their father's burial, and the plaintiffs had to have their mother's remains and tombstone moved and placed next to their father's lot. We held that the allegation of defendants' refusal to allow the burial, which disrupted the funeral and destroyed the solemnity of the occasion, indicated an act fitting the requirements of an act "beyond all possible bounds of decency" and "atrocious and utterly intolerable." 428 So.2d at 640.
In our most recent tort of outrage case, National Security Fire & Casualty Co. v. Bowen, 447 So.2d 133 (Ala.1983), we held that the conduct of the private investigators hired by National Security to investigate a fire loss was sufficient to meet the Inmon standard. The investigators threatened the lives of Bowen and his children. Furthermore, the threat to Bowen was an immediate threat because the investigators forced Bowen at gun point to drive into the woods and lie on the ground. While Bowen was lying on the ground, the investigators snapped the hammer on the gun.
The instant case is different from Cates and Bowen in that it involves the employeremployee relationship. While an employer does not possess a roving license to threaten his employees in an extreme or outrageous manner, Inmon, supra, he does *1105 have a right to comment on matters regarding the employee's job performance, even if he chooses to comment in a tactless or unkind manner.[2]
The tort of outrage was not intended to force employers, or anyone else, to be considerate of others. We recognized the tort of outrage to allow recovery for conduct "intolerable in a civilized society." I do not believe that the plaintiff here has alleged sufficient facts to meet the Inmon test of the tort of outrage.
Further, the fact that the conduct allegedly caused Rice to miscarry should not be considered in determining whether there are sufficient facts to meet the requirements of the tort of outrage. The focus in the tort of outrage is on the gravity of the conduct rather than the results of the conduct. Edwards v. McAllister, 437 So.2d 74 (Ala.1983); Empiregas, Inc., of Gadsden v. Geary, 431 So.2d 1258 (Ala.1983).
I would like to make one final point. Alabama is still an employment-at-will state. Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala.1984). This means an employee cannot recover damages merely because he was terminatedregardless of the reason for the termination. The majority opinion in the present case, however, would seem to allow recovery for termination by relaxing the requirements of the tort of outrage. This opinion implicitly modifies the employment-at-will law by allowing an employee who is terminated after being reprimanded or warned by the employer to sue and recover on a general allegation of outrage. I do not believe this is what the majority intended to do.
I would affirm the judgment dismissing all of the plaintiff's causes of action.
ALMON and SHORES, JJ., concur.
NOTES
[1] In a companion case, Collins v. General Time Corp., 549 F.Supp. 770 (N.D.Ala.1982), it was alleged that the employer's manager went to the plaintiff's home when she had broken ribs and accused her of feigning job-related injuries. The court denied the employer's motion for summary judgment on the outrage count, placing emphasis on the fact that the employer's conduct took place "off premises," some distance from the place of employment.
[2] He may not have the right to make these comments away from the workplace, Collins v. General Time Corp., 549 F.Supp. 770 (N.D.Ala. 1982), or after employment has ceased, M.B.M. Co. v. Counce, 268 Ark. 269, 596 S.W.2d 681 (1980). Although the employer in the instant case was alleged to have withheld W-2 forms and performance-related information from Rice after Rice's termination, this conduct, while causing inconvenience, would clearly not be conduct I would characterize as outrageous.