Louise and Ernest Boykin ("the parents"), individually and as next friends and parents of their minor daughter, Rhonya Boykin, filed a three-count complaint against defendants Magnolia Bay, Inc., d/b/a Family Planning Medical Center ("Family Planning"); Owen B. Evans, M.D.; Elaine Miller; and Dawn O'Donnell, all individually and as agents for Family Planning, arising from an abortion performed on Rhonya by Dr. Evans at Family Planning. Count I asserted a claim based on the tort of outrage, on behalf of the parents individually. Count II, a claim also based on the tort of outrage, was asserted on behalf of Rhonya. Count III, also asserted on behalf of Rhonya, alleged that the abortion constituted a trespass and an assault and battery. The trial court entered summary judgment in favor of the defendants:
 "This is a suit by Rhonya Boykin and her parents claiming damages from defendants and arising out of an abortion performed on Rhonya. The defendants are the doctor, the clinic and some of the clinic personnel.
 "The facts are essentially undisputed. Rhonya was one month shy of her sixteenth birthday and several weeks pregnant. She went to the defendant clinic with her boyfriend and a girlfriend. Rhonya represented that she was eighteen and signed two separate forms to that effect. She also gave a false address and telephone number. The girlfriend posed as Rhonya's sister. Rhonya was aware of the requirement that persons under eighteen years have parental consent for an abortion and made the misrepresentations so that she would not have to tell her parents.
 "Neither Rhonya nor her parents attempt to state a statutory cause of action based on Sec. 26-21-1 et seq., Code of Alabama 1975. Rather, all plaintiffs allege a tort of outrage and Rhonya further alleges trespass and assault and battery.
 "The Court concludes that Rhonya, by reason of her willful, affirmative misrepresentations, is in pari delicto with [the] defendants, were they otherwise civilly liable, and her claim is barred.*
Further, the claim of the parents is derivative in nature, being based on the same alleged breach of duty which serves as the basis of Rhonya's claim and, as such, is barred by Rhonya's misrepresentations."
The material facts underlying the complaint are essentially undisputed:
Rhonya Boykin, born January 14, 1972, became pregnant in the fall of 1987 at the age of 15.[1] She discussed her pregnancy with her boyfriend, Kirby Gentry, the father of the unborn child, and they decided to abort the pregnancy. In order to obtain money for Rhonya's abortion, Kirby told his father that Rhonya had to have an abortion because a doctor had advised her that she could not carry a child to term, when, in fact, Rhonya had not been so told. Rhonya also told Wendy Chapman, her girlfriend, about her pregnancy and about her decision to abort the pregnancy. Rhonya decided she would not tell her parents about the pregnancy or the abortion.
Rhonya and Wendy telephoned several abortion clinics and ascertained that the legal age for obtaining an abortion without parental consent was 18 years. According to Rhonya and Wendy, all of the abortion clinics except Family Planning told Rhonya that she would have to submit proof that *Page 641 
she was 18 years of age or older, or, if she was under 18, that she must have a parent with her or a note from her parent. When they telephoned Family Planning, Ms. O'Donnell, the director of Family Planning, asked Rhonya her age. Rhonya told Ms. O'Donnell that she was 18 and asked what she needed to bring with her. Ms. O'Donnell told Rhonya to bring herself and the money. When Rhonya arrived at Family Planning with Wendy and Kirby, she filled out 2 forms indicating that she was 18 years old. According to Rhonya and Wendy, Rhonya looked 18, and at all times Rhonya represented to Family Planning that she indeed was 18. No one at Family Planning asked Rhonya for proof of her age or took any steps to verify her age. According to the procedures at Family Planning, its staff determines the ages of patients by asking their ages and their birthdates; and if a patient appears to be under 18 and/or if there is suspicion as to a patient's age, then Family Planning might ask for reliable documentation. If either the age or the birthdate indicates an "under 18 applicant," then Family Planning informs the individual that either parental consent or a judge's order is required before that individual can receive an abortion.
In order to determine whether Family Planning had obtained the legal consent for the abortion, Dr. Evans, prior to performing the abortion, reviewed the information sheet that Family Planning employees had obtained from Rhonya. Both forms that Rhonya signed listed her age as 18; therefore, Dr. Evans concluded that Family Planning had indeed obtained such consent.
The parties stipulated that Rhonya and her parents are not seeking any out-of-pocket expenses. Furthermore, there is no contention that the abortion procedure was performed incorrectly or that Rhonya suffered any injuries during the course of the abortion or that she suffered any complications therefrom. Rather, damages are sought for the alleged injury occasioned by the performance of an abortion on a girl under the age of 18 without parental consent. We are aware that this case involves an extremely sensitive area of the law; thus, we must emphasize that we have not rendered this decision lightly and without due consideration to the law and to the normal deference given by the judiciary to legislative enactments. That being said, we will address those issues directly presented for our review — whether Rhonya's intentional misrepresentations of her age bar her recovery and whether the parents' claim is derivative in nature.
The plaintiffs contend that the trial court erred in barring Rhonya's claims based on the defense of in pari delicto, because she was a minor when she made the misrepresentations as to her age. Although they acknowledge that "it is generally true that an infant is liable for his torts," see Drennen MotorCar Co. v. Smith, 230 Ala. 275, 277, 160 So. 761, 763 (1935), they contend that the fact that Rhonya misrepresented her age in this case should fall within the well-settled exception pursuant to which a minor may disaffirm a contract entered into during minority at any time prior to ratification even though the minor misrepresented his age when entering into the contract. We disagree.
Whereas we recognize that a minor's age may be a factor in determining whether that minor has the capacity to be guilty of a tort, minority in and of itself is not a defense to an action for tort. See Hooper Motor Co. v. Harris, 226 Ala. 278,146 So. 618 (1933). Rather, as stated by Roberts and Cusimano, AlabamaTort Law Handbook § 35.3 at 711 (1990), in order to determine the liability of a minor for his own tort, we should look to the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child.
Having reviewed the evidence presented, taking into consideration the above elements in order to determine Rhonya's responsibility for her intentional misrepresentation of her age in order to obtain an abortion, we are persuaded that the trial *Page 642 
court properly entered summary judgment in favor of the defendants, as to Rhonya's claims, based on the affirmative defense of in pari delicto. Therefore, we affirm the summary judgment as to Rhonya's claims based on the torts of outrage, trespass, and assault and battery.
As for the parents' claim based on the tort of outrage, the trial court found that that claim was derivative in nature and was therefore barred by Rhonya's misrepresentations. The parents, however, contend that their claim is not a derivative claim; that is, they contend that their claim is different from and independent of Rhonya's claims and arises from their rights as set forth in the parental consent statute. We agree.
Alabama's parental consent statute, upheld as constitutional in Ex parte Anonymous, 531 So.2d 901 (Ala. 1988), follows the basic requirements found in Bellotti v. Baird, 443 U.S. 622,99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), describing the type of parental consent statute that would pass constitutional muster.
 "The constitutionality of a parental consent statute is premised on the state's legitimate interest in ensuring that minors make informed choices with respect to such grave and irrevocable matters as abortion, and [upon the belief] that promoting parental consultation and/or consent to such decisions would serve that interest. Bellotti, 443 U.S. 622, 99 S.Ct. 3035
[61 L.Ed.2d 797].
 ". . . Thus, . . . the state has a legitimate interest in encouraging parental participation in a minor's decision to obtain an abortion and in protecting children from making decisions marked by immaturity and lack of information."
Matter of Anonymous, 531 So.2d 895, 898 (Ala.Civ.App. 1988), rev'd on other grounds, Ex parte Anonymous, supra. (Emphasis added.)
According to Ala. Code 1975, § 26-21-1(a), one of the purposes of the parental consent statute is "protecting therights of parents to rear children who are members of their household." Furthermore, the legislature found that "parental consultation is usually desirable and in the best interests of the minor." See Ala. Code 1975, § 26-21-1(b).
Thus, we hold that a parent's right to be informed regarding a minor child's intended abortion creates a right of action on the part of the parents against any person who performs an abortion on the minor child without having obtained parental consent or the required court-ordered waiver of consent, despite the minor's intentional misrepresentation of her age. In the instant case, although the defendants obtained Rhonya's consent and although Rhonya intentionally misrepresented her age, it is undisputed that the defendants failed to obtain the consent of Rhonya's parents or, in the alternative, a court-ordered waiver of consent. The defendants owed Rhonya's parents a duty separate from that owed to Rhonya — the defendants owed Rhonya's parents the duty to obtain their consent in order to perform an abortion on their minor daughter, which duty could have been dispensed with by obtaining a court-ordered waiver of consent. The parents' claim in this case is not derivative in nature and is not barred by Rhonya's misrepresentations. The trial court's finding that "the claim of the parents is derivative in nature" is erroneous. However, a correct decision will not be disturbed even if the court gives the wrong reasons. Davison v. Lowery,526 So.2d 2 (Ala. 1988), cert. denied, 488 U.S. 854,109 S.Ct. 140, 102 L.Ed.2d 113 (1988).
To determine whether the trial court erred in its judgment, we must determine whether the parents presented sufficient evidence on their only claim — the tort of outrage — to preclude the trial court's entry of summary judgment. This case was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence" rule. See Ala. Code 1975, § 12-21-12.
The tort of outrage has been explained as follows:
 "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress *Page 643 
and for bodily harm resulting from the distress."
American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980).
To support a cause of action based on the tort of outrage, the facts must show conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. American Road Service Co. v. Inmon,National Security Fire Casualty Co. v. Brown, 447 So.2d 133
(Ala. 1983); see, also, Tyson v. Safeco Insurance Co.,461 So.2d 1308 (Ala. 1984); Empiregas, Inc. v. Geary,431 So.2d 1258 (Ala. 1983); Cates v. Taylor, 428 So.2d 637 (Ala. 1983);Edwards v. McAllister, 437 So.2d 74 (Ala. 1983); and Peddycoartv. City of Birmingham, 392 So.2d 536 (Ala. 1980).
It is undisputed that the parents never had any contact with anyone at Family Planning; they were not present when the abortion was performed, and they did not discover the fact of the abortion in question until several months after the abortion had been performed. Under Restatement (Second) ofTorts, § 46, Comment L, (1979), the cases limit recovery for emotional distress by relatives of tort victims to those who were actually present when the tort was committed:
 "The cases thus far decided, . . . have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred. The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford."
Based on the foregoing, the parents cannot recover for the tort of outrage. The parents did not seek to recover under the remedy provided by the legislature; accordingly, we affirm the summary judgment as to the parents' claim.
AFFIRMED.
MADDOX, JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
KENNEDY, J., concurs in the result.
* "The in Pari delicto defense is essentially the same as the estoppel defense found in Restatement (Second) of Torts, Sec. 894 (1982 Ed.), the elements of which are also established without dispute."
[1] The abortion was performed on December 12, 1987, one month prior to Rhonya's sixteenth birthday.