The circuit court entered a summary judgment for the defendants Crawford Company, Wayne Kruse, and Don Payne (all hereinafter referred to as "Crawford Company"), on the plaintiff Bruce Alan Jones's complaint alleging the tort of outrage and making other tort and contract claims. The Court of Civil Appeals reversed as to the outrage claim. See Jones v.Crawford Co., 693 So.2d 454 (Ala.Civ.App. 1995). We have granted Crawford Company's petition for certiorari review. We reverse.
We are compelled to examine the type of conduct required for the tort of outrage and to determine whether Jones produced sufficient evidence to avoid a summary judgment on his claim of outrage.
On June 1, 1983, Jones was severely injured by an explosion while he was on his job at the Virginia Chemicals Company plant at Bucks, in Mobile County; the explosion left him permanently and totally disabled. He was blinded in his left eye; he suffered a punctured lung; all the bones in his face were broken; his right eye was injured; and his right arm was broken. He made a claim for workers' compensation under the Alabama Workers' Compensation Act. Northwestern National Insurance Company, Virginia Chemical's workers' compensation insurance carrier at the time of the accident, settled the disability portion of Jones's claim but left open his claim for future medical expenses. Crawford Company *Page 459 
had contracted with Northwestern to act as a claims adjuster to handle ongoing medical expense claims made by injured workers.
On September 22, 1993, Jones filed a complaint alleging breach of agreement and the tort of outrage. He named as defendants Crawford Company, Wayne Kruse, Don Payne, Virginia Chemicals, and Northwestern, alleging that they had failed to make, or had delayed, payment of several of Jones's medical bills. Jones contends that Crawford Company was deliberately slow in paying his medical bills and delayed in an attempt to force him to settle his claims for future medical benefits; however, he says, he refused. Evidence contained in Crawford 
Company's case review notes dated October 11, 1993, indicate that because Jones had refused any type of lump-sum settlement, Crawford Company was at a "standstill." (C.R.697.) Jones later amended his complaint to include allegations of fraud and bad faith.
On December 20, 1994, Crawford Company moved for a summary judgment. The trial court entered a summary judgment on February 10, 1995, in favor of each defendant on all claims. Jones appealed to this Court, but only as to Crawford 
Company, Kruse, and Payne. We transferred the case to the Court of Civil Appeals, pursuant to Ala. Code 1975, § 12-2-7. The Court of Civil Appeals affirmed the summary judgment on all claims except that alleging the tort of outrage. We have granted the defendants' petition for certiorari review.
A summary judgment is proper only where no genuine issues of material fact exist and the movant is entitled to a judgment as a matter of law. Ala.R.Civ.P. 56; Coleman v. Bessemer CarrawayMethodist Medical Center, 589 So.2d 703 (Ala. 1991). Because this case was filed after June 11, 1987, the applicable standard of review is the "substantial evidence" rule. See Ala. Code 1975, § 12-21-12. We are presented with the issue whether Jones produced substantial evidence that Crawford 
Company intentionally or recklessly engaged in conduct so extreme and outrageous as to constitute the tort of outrage; and if so, then whether Jones produced substantial evidence that because of Crawford Company's action he suffered emotional distress so severe that no reasonable person could be expected to endure it. See American Road Serv. Co. v. Inmon,394 So.2d 361 (Ala. 1980).
Jones's claim of outrageous conduct was based upon these allegations:
 (1) That Crawford Company was slow in paying several bills owed to health care providers for necessary treatment of Jones provided in connection with his 1983 work-related injuries.
 (2) That Crawford Company knowingly and intentionally delayed payment of Jones's medical bills with the intent to coerce Jones to settle his claims for future medical benefits.
 (3) That Crawford Company was aware of Jones's frustration with its delay in paying his medical bills.
We have carefully studied the record in this case and have reviewed the law on outrageous conduct set out in American RoadServ. Co. v. Inmon, 394 So.2d 361 (Ala. 1981). We conclude that the Court of Civil Appeals improperly reversed the summary judgment as it related to Jones's outrage claim.
Jones's burden in this case is a heavy one. In order to create a jury question on the tort of outrage, there must exist "sufficient evidence from which permissible inferences could be drawn to support a finding of the extreme conduct necessary to constitute outrageous conduct." Empiregas, Inc., of Gadsden v.Geary, 431 So.2d 1258, 1261 (Ala. 1983).
The first issue presented is whether Jones presented substantial evidence that Crawford Company intentionally or recklessly engaged in conduct that was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Inmon, 394 So.2d at 365. Traditionally, we have applied the Inmon test strictly, thereby allowing an outrage claim to go to the jury only in egregious cases. See, e.g., State Farm Automobile Insurance Co. v.Morris, 612 So.2d 440 (Ala. 1993); Gibson v. Southern *Page 460 Guaranty Insurance Co., 623 So.2d 1065 (Ala. 1993); Gibbs v.Aetna Casualty Surety Co., 604 So.2d 414 (Ala. 1992); Farleyv. CNA Insurance Co., 576 So.2d 158 (Ala. 1991); Empiregas,Inc., of Gadsden v. Geary, 431 So.2d 1258 (Ala. 1983).
We first recognized the tort of outrage — or intentional infliction of emotional distress — American Road Serv. Co. v.Inmon, 394 So.2d 361 (Ala. 1980), in which we set out the stringent standards a plaintiff must meet in order to recover for outrageous conduct. The plaintiff, Inmon, formerly employed as a field adjuster and claims supervisor, sued his former employer alleging intentional infliction of emotional distress.Inmon, 394 So.2d at 365. We held that Inmon, who claimed to have suffered harassment and humiliation, had failed to produce adequate evidence to meet the requirements for the tort of outrage, because he had presented no evidence that the employer had intended to cause him emotional distress. Id. at 367.
In Inmon, we set out the elements of the tort of outrage: The plaintiff must prove (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. SeeThomas v. BSE Industrial Contractors, Inc., 624 So.2d 1041,1043 (Ala. 1993), citing Inmon, supra, at 365.[1] In Inmon, we clarified the second element by stating:
 "Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
394 So.2d at 365, citing Restatement (Second) of Torts § 46, Comment d (1965); see Fitch v. Voit, 624 So.2d 542 (Ala. 1993).
In Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208
(Ala. 1990), we set the minimum threshold that a defendant's conduct must cross in order for the defendant to be liable for outrageous conduct. The plaintiff, McDonald, an injured worker, sued his employer's workers' compensation carrier, alleging intentional infliction of emotional distress resulting from the carrier's alleged purposeful withholding of medical benefits with the intent to coerce McDonald to settle his claim for medical benefits. 567 So.2d at 1210. We held that the emotional distress alleged by McDonald was of the degree that meets theInmon standard. Id. at 1221. McDonald had presented evidence that he was in constant pain, that he had been refused furthermedical treatment and pharmaceuticals, and that his bills had been sent to collection agencies as a result of the defendant CNA's refusal to pay his medical bills.Id. at 1210. He also presented evidence that CNA had acted with the intent to pressure McDonald into settling for an amount far less than the amount of his medical expenses.Id.
The evidence in Jones's case is unlike that in McDonald.
There is no evidence that Jones was refused medicaltreatment or that he was in day-to-day constant pain, as wasthe plaintiff inMcDonald. Jones presented deposition testimony indicating that he became more and more irritated and embarrassed over the nonpayment of his bills. Although Jones presented substantial evidence that he had suffered some distress, the evidence did not suggest that level of severe emotional distress required to support a recovery for outrageous conduct. Moreover, the evidence indicated that Jones's embarrassment and irritation were not of the sort that no reasonable person could be expected to endure; therefore, we must conclude that his evidence does not suggest that the defendant crossed the McDonald threshold. *Page 461 
In 1991, we addressed the issue whether the failure of an insurance carrier to timely pay insurance benefits constituted outrageous conduct. In Farley v. CNA Insurance Co.,576 So.2d 158 (Ala. 1991), the plaintiff, Patricia Lynn Farley, sued CNA Insurance Company, alleging negligence, wantonness, bad faith, and outrageous conduct in failing to pay her workers' compensation benefits after her hand was crushed between two steel doors while she was at work. 576 So.2d at 159. We held that CNA's conduct did not establish the tort of outrage. Id.
at 158-59. We reasoned that although Farley's evidence indicated that she had experienced a delay in payment, had been given "the runaround," and had been subjected to an unsympathetic attitude from on the part of CNA, CNA's conduct did not rise to the level of "extreme" and "outrageous" conduct that is "so severe that no reasonable person could be expected to endure it." Id. at 159-60. We stated that "there is clearly a threshold beyond which an insurance company's recalcitrance must go before it crosses into outrageous conduct. . . . We find that the conduct in this case did not cross this threshold." Id. at 160.
From the evidence adduced in this present case, reasonable people could conclude that Crawford Company's conduct was intended to cause Jones emotional distress. Crawford Company knew Jones was becoming more and more frustrated with the constant delays in payment of his medical bills. Jones presented documentary evidence indicating that Crawford 
Company wanted to persuade him to settle his claims for future medical benefits. According to Crawford Company's internal case review notes, Crawford Company also knew that Jones's medical bills would continue indefinitely.
Although Jones may have offered sufficient evidence of the first element of the tort of outrage, it is clear that the conduct of Crawford Company is far from being "beyond all possible bounds of decency" and "utterly intolerable in a civilized society." Jones has not alleged or presented evidence of facts that would meet the Inmon standards. Jones complains primarily of the inconvenience caused by the delay in payment of his medical bills. During his deposition testimony, Jones stated that the emotional distress he experienced consisted of irritation or "aggravation," inconvenience, disconcertment, and annoyance. Jones testified by deposition to the following:
 "Q. All right. Tell me how you have been damaged, Bruce. Tell me how you've been damaged by the problems you've had about payments on your accounts?"
 "A. Just embarrassed, degraded. I pay all my bills on time and, you know, I just don't like people calling me and bugging me about it. It gets me mad. I argue with my wife, you know."
C.R. at 183-84. Although constant delay may be inconvenient and upsetting at times, Crawford Company's alleged conduct still does not meet the stringent test of outrageous conduct as required by our decisions and the Restatement (Second) of Torts
§ 46. Compare Farley v. CNA Insurance Co., supra; McDonald, supra; and Empiregas, Inc., of Gadsden, supra. Section 46, Comment d, Restatement, supra, limits liability for the tort of outrage by providing the following:
 "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to . . . occasional acts that are definitely inconsiderate and unkind."
Viewing the evidence in the light most favorable to the nonmoving party, a jury could not reasonably find that Crawford Company's conduct was "beyond all possible bounds of decency, . . . atrocious . . . and utterly intolerable in a civilized society." Inmon, supra. Although the evidence indicates that Jones was inconvenienced and, as he describes it, embarrassed, no evidence presented in this case suggests conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."Inmon, 394 So.2d at 365. Liability for the tort of outrage attaches only when the defendant's conduct is extreme. Id. We find no evidence of conduct that rises to the level necessary to establish a cause of action for *Page 462 
the tort of outrage,[2] and we decline to hold that the facts of this case meet the stringent standards proclaimed in Inmon, supra.
Accordingly, we reverse the judgment of the Court of Civil Appeals and remand for that court to enter a judgment affirming the summary judgment for Crawford Company as to the claim of outrage.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, BUTTS, and SEE, JJ., concur.
[1] In Thomas, we recognized that as of 1993 the cases in which we had found sufficient evidence to create a jury question fit into the following three categories:
 "1) cases having to do with wrongful conduct in the context of family burials, see Whitt v. Hulsey, 519 So.2d 901 (Ala. 1987)"; "2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim, National Security Fire Cas. Co. v. Bowen, 447 So.2d 133 (Ala. 1983)"; and "3) a case involving egregious sexual harassment, Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala. 1989)."
624 So.2d at 1044.
[2] For a case in which this Court found conduct that meets the stringent Inmon test, see Whitt v. Hulsey,519 So.2d 901, 906 (Ala. 1987) (holding that "the evidence [was] sufficient to support the claim of outrageous conduct, where the alleged act was the desecration and destruction of a portion of a family burial ground").