**Judy A. HOUSE, Plaintiff,**

v.

**CORPORATE SERVICES, INC.; Wal–Mart Stores, Inc., Defendants.**

**Civ. A. No. 94–D–1141–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

March 27, 1995.

edge of the hazard. Under such circumstances,

Jimmy L. DeBardelaben, Montgomery, AL, for plaintiff.

Rhonda Pitts Chambers, Charles F. Carr, Glenn E. Ireland, Birmingham, AL, for defendants.

### *MEMORANDUM OPINION*

DE MENT, District Judge.

Before the court is Defendants' Motion for Summary Judgment, filed December 27, 1994. Defendants contemporaneously filed a brief in support of their motion. Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgement on January 13, 1995. For reasons articulated below, Defendants' motion is due to be granted.

the courts presume notice").

### *Jurisdiction and Venue*

The court's assertion of jurisdiction is predicated on 28 U.S.C. § 1332(a), as the parties are of diverse citizenship and the amount of controversy exceeds FIFTY THOUSAND DOLLARS ($50,000), excluding interest and costs.[1] Venue is appropriate in the Middle District of Alabama as the acts giving rise to this claim transpired within this district. *See* 28 U.S.C. § 1391(a)(2). Defendants were properly served with notice of this order while in this district; therefore, the court may assert jurisdiction over the person of the defendants.

### *Background*

On November 27, 1990, Plaintiff Judy House (hereinafter "House") injured her lower back while working as an employee of Wal–Mart Stores, Inc. (hereinafter "Wal–Mart"). Said accident became the subject of a worker's compensation claim which was settled with the approval of the Circuit Court of Montgomery County, Alabama, on May 31, 1991. Pursuant to the settlement agreement, Wal–Mart paid seven thousand and no/dollars ($7,000.00) and remained liable for Plaintiff's medical expenses relating to Plaintiff's work-related injuries in exchange for its release from further liability arising from this action.

Defendant Corporate Stores, Inc. (hereinafter "CSI") was and continues to be the worker's compensation carrier for this claim. At the time of the subject settlement agreement, CSI had paid five thousand four hundred seventy dollars and 14/100 ($4,470.14) to health care providers for medical care and treatment provided to Plaintiff.

Subsequent to the settlement, Plaintiff developed complications for which she sought and received extensive medical attention, including two separate surgical procedures. CSI avers that as of December 20, 1994, it had paid approximately thirty-five thousand dollars ($35,000) in medical expenses to various health care providers on behalf of Plaintiff for medical care she (Plaintiff) received.

Plaintiff contends that despite having the recognized and accepted responsibility to provide continued medical coverage for Plaintiff's job-related injury, Defendants have continuously and persistently refused to perform their duty. House also avers that Defendants continue to make unjustified refusals to pay necessary and related medical costs for treatment required by Plaintiff, despite the recognition by Alabama Circuit Judge Robert M. Harper on November 10, 1993, that medical benefits were owed at that time.

On August 2, 1994, Plaintiff filed a law suit against Wal–Mart alleging outrageous conduct and bad faith failure to pay medical benefits due. Plaintiff's claim of outrageous conduct arises from alleged unpaid or delayed payment of her medical bills and a failure to approve an overnight stay in the hospital after Plaintiff underwent a myelogram. Plaintiff claims that she has suffered severe emotional distress as a proximate result of Defendants' alleged conduct and that she has been forced to forego needed medical treatment. Plaintiff seeks compensatory and punitive damages for the harm allegedly suffered as a result of Defendants' malfeasance.

Defendants contend that there has been no improper motive or bad faith in the delay of paying Plaintiff's medical bills and that Plaintiff has never been denied necessary treatment. They further contend that any delays or mistakes in payment have resulted from the complicated process of handling a medical case in which a great number of bills have been submitted. Defendants further claim that any bad faith claim involving workmen's compensation benefits is barred by the exclusivity provision(s) of the Alabama Workers' Compensation Act (hereinafter the "AWCA").

Defendants also argue that Plaintiff's generalized apprehensions do not give rise to the level of severe emotional distress for which relief can be granted. Defendants claim that Plaintiff has not sought professional counseling for the alleged distress and, thus, has not presented substantial evidence that she has

---

1. Plaintiff is an Alabama citizen. Defendant Corporate Services, Inc. is incorporated under the laws of Arkansas with its principal place of business in Michigan. Defendant Wal–Mart Stores, Inc. is incorporated under the laws of Delaware with its principal place of business in Arkansas.

suffered emotional distress so severe as to be regarded as atrocious and utterly intolerable in a civilized society, as is required to recover under the tort of outrage in Alabama.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

### I. Bad Faith Failure to Pay

■ The Alabama Supreme Court has discussed the effect of the AWCA on other statutory and common law rights of action and generally conclude that issues of fact and law underlying tort claims are different from those presented in worker's compensation claims.[2] In *Lowman v. Piedmont Manufacturing Company,* 547 So.2d 90 (Ala.1989) the court held that:

> "... the exclusive remedy provisions were not designed to shield an employer or its insurer from the entire field of tort law. These provisions apply only to limit the liability of an employer or its insurer to the statutorily prescribed claims for job-related injuries."

*Lowman,* 547 So.2d at 92.

However, the court also noted that a mere delay in payment of worker's compensation benefits is not actionable as a separate tort claim, as the penalty for untimely payment of such benefits is provided by statute. *Id.* at 94. The *Lowman* court was referring to *Alabama Code* (1975) § 25–5–59 wherein specific penalties are prescribed for overdue compensation payments.[3]

Here, Plaintiff has offered nothing in support of their allegation of bad faith failure to

---

2. *Alabama Code* (1975) § 25–5–53 provides in relevant part that:

> "The rights and remedies granted in this chapter to an employee exclude all other rights and remedies of the employee ... on account of injury, loss of services, or death. ... no employer shall be held civilly liable for personal injury to or death of the employer's employee, ... whose injury or death is due to an accident ... while engaged in the service or business of the employer ... In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to the workers' compensation insurance carrier of the employer ..."

3. Section 25–5–59 of the *Alabama Code* reads:

> "Compensation shall begin with the fourth day after disability, and if the disability from the injury exists for a period as much as 21 days, compensation for the first three days after the injury shall be added to and payable with the first installment due the employee after the expiration of the 21 days. If any installment of compensation payable is not paid without good cause within 30 days after it becomes due, there shall be added to the unpaid installment an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the installment."

Alabama Code § 25–5–59(b).

pay that would controvert Defendant's explanation of unintentional oversight and ordinary delays due to the volume of medical bills presented for payment. However, the court must be mindful that when ruling on summary judgment it must construe the evidence and actual inferences arising therefrom in the light most favorable to the nonmoving party. Therefore, the court will assume, arguendo, that the bad faith allegation is true. Notwithstanding this assumption, the court finds that Plaintiff's bad faith claim against the employer's workers' compensation carrier is barred due to the exclusive remedy provisions of the AWCA.

In *Oliver v. Liberty Mutual Insurance Company,* 548 So.2d 1025, 1026 (Ala.1989), the Alabama Supreme Court specifically addressed the torts that comprise the causes of action in the case before the court. The *Oliver* court stated:

> This court has held that a claim for bad faith failure to pay an insurance claim in the context of workmen's compensation claims is barred by the workmen's compensation exclusivity provisions, but that a claim based on the tort of outrage is not barred.

*Oliver,* 548 So.2d at 1026 (citing *Nabors v. St. Paul Insurance Company,* 489 So.2d 573 (Ala.1986); *Garvin v. Shewbart,* 442 So.2d 80 (Ala.1983)), *see also Farley v. CNA Insurance,* 576 So.2d 158 (Ala.1991) and *Wooley v. Shewbart,* 569 So.2d 712 (Ala.1990).

## II. Tort of Outrage/Intentional Infliction of Emotional Distress

■ Plaintiff contends that Defendants have acted in an outrageous manner by intentionally and deliberately withholding necessary medical testing and treatment in an attempt to cause her known and foreseeable extreme mental anguish. Plaintiff further alleges that as a proximate consequence of Defendant's outrageous conduct, she has been injured and is entitled to recover damages under Alabama's tort of outrage.

In the seminal case of *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala. 1980), the Alabama Supreme Court announced the following definition for the tort of outrage:

> [w]illful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure. . . .

*Inmon,* 394 So.2d at 365.

Since *Inmon,* the Alabama Supreme Court has found the forgoing standard sufficiently satisfied as to present a jury question in but a modicum of instances. *See Continental Casualty Insurance Co. v. McDonald,* 567 So.2d 1208 (Ala.1990) (stating "[t]his Court has applied the ... test rather strictly, to hold in a number of cases that alleged conduct did not present a jury question on the tort of outrage"); *Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041 (Ala.1993) ("[t]his Court has consistently held that the tort of outrage is available in only the most egregious circumstances").

After citing numerous cases in which the Alabama Supreme Court held that the plaintiff's claim did not present an issue for the jury, the *Thomas* court noted that all the cases in which the Alabama Supreme Court has found a jury question on a tort of outrage claim fall within three categories:

> 1) cases having to do with wrongful conduct in the context of family burials, *see Whitt v. Hulsey,* 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), *Levite Undertakers Co. v. Griggs,* 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), *Cates v. Taylor,* 428 So.2d 637 (Ala.1983), (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the

insured into settling an insurance claim, *National Security Fire & Casualty Co. v. Bowen*, 447 So.2d 133 (Ala.1983); and 3) a case involving egregious sexual harassment, *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala.1989).

*Thomas*, 624 So.2d at 1044.

■ The foregoing excerpt from *Thomas* suggests that the Alabama Supreme Court is not predisposed to recognize that tort of outrage claims present jury questions. In fact, the Alabama Supreme Court has noted that in order to demonstrate intentional infliction of emotional distress, or tort of outrage, "the plaintiff must present substantial evidence of 'conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Fitch v. Voit*, 624 So.2d 542, 544 (Ala.1993) (citing *Inmon*, 394 So.2d at 365).

Here, Plaintiff claims that the defendants are liable under the tort of outrage for deliberately withholding necessary medical testing and treatment. Plaintiff's claim could arguably be said to fall under the second category involving settlement of an insurance claim. However, the court finds that the present case and *Bowen* are factually dissimilar and that the general reluctance to find an actionable claim based on intentional infliction of emotional distress should not be ignored in this case.[4] Therefore, general averments of delay, refusal to pay, and refusal to approve an overnight stay in the hospital, as here presented, are not sufficient to establish the existence of any conduct rising to the degree of going beyond the bounds of human decen-cy and to be regarded as atrocious and utterly intolerable in a civilized society, as is required to constitute a juryworthy tort of outrage claim.

Plaintiff exhorts the court to focus on the manner in which the alleged wrongful acts were consummated. *See* Pl's. Brief in Opp. to Mot.Summ.Jud., pp. 1–2. Plaintiff contends that despite numerous attempts CSI would not pay the costs she incurred as a result of her work-related injury. The court notes that Plaintiff's contention contains several noteworthy features: seven medical bills; CSI's failure to approve an overnight stay in a hospital after a myelogram had been performed; numerous requests for payment of medical bills and two motions to compel Defendants to honor their commitment. However, the court is not convinced that Plaintiff presents an actionable tort of outrage claim. Therefore, the court concludes that, based on *Inmon* and its progeny, Defendants' conduct may not be legally characterized as "atrocious and utterly intolerable in a civilized society" which transcends all bounds of decency.

### Conclusion

Plaintiff's bad faith failure to pay for needed medical care is subsumed by the exclusivity remedy provisions of the AWCA; therefore, the Court concludes that Defendants' motion for summary judgment on Plaintiff's bad faith failure to pay her insurance claim is due to be granted.[5] Moreover, Defendants' conduct is not appropriately termed "atrocious and utterly intolerable in a civilized society"; thus, the Court finds that Defendants' motion for summary judgment on

4. In *Bowen*, the defendant insurance company hired investigators to investigate a fire loss. The court found that the investigators: 1) presented false evidence to procure indictment against the plaintiff for arson and false; 2) threatened to kill the plaintiff's two small sons; and 3) told the plaintiff that he would look good lying beside his dead brother. *Bowen*, 447 So.2d at 136–37. Based on the foregoing findings, the *Bowen* court held that the conduct of the defendant insurance company's agent was "so horrible, so atrocious, so barbaric, that the jury could find as a matter of fact that Bowen suffered severe emotional distress; that no civilized person could be expected to endure the acts committed without suffering mental distress." *Bowen*, 447 So.2d at 141. Clearly the events in above style case do not compare, in terms of atrocity and egregiousness, to those in *Bowen*.

The court further notes that the conduct of the defendant's agents in *Bowen* were executed to induce a settlement. In the action before the court, the parties have already settled the case and the payment of medical expenses is a condition upon which the parties have heretofore agreed.

5. The court stresses that, assuming the applicable statute of limitations has not run, nothing expressed in this opinion is intended to preclude Plaintiff from seeking relief under the appropriate AWCA provision.

Plaintiff's tort of outrage claim is, likewise, due to be granted.

A judgment in accordance with this memorandum opinion shall be entered separately.