Ninnia M. WIGGINS, Plaintiff,

v.

RISK ENTERPRISE MANAGEMENT LIMITED,[1] Defendant.

No. Civ.A. 97–D–1200–S.

United States District Court, M.D. Alabama, Southern Division.

July 6, 1998.

---

1. The court notes that the style of this case has, to date, referred to several different defendants, as designated in Plaintiff's Complaint: (1) "RISK ENTERPRISE MANAGEMENT LIMITED," which filed the instant Motion; (2) "DEFENDANT NUMBER ONE BEING THE PROPER LEGAL DESIGNATION OF THE ENTITY KNOWN AS REM INSURANCE COMPANY;" and (3) "DEFENDANT NUMBER TWO BEING THAT PERSON OR ENTITY WHICH CARRIED, ISSUED, AND PROVIDED THE WORKMEN'S COMPENSATION INSURANCE COVERAGE REFERRED TO IN THE COMPLAINT." (*See* Plaintiff's July 7, 1997 Complaint ("Complaint").) As Plaintiff has never amended her Complaint to properly designate these parties, and as there is no fictitious party practice in the Federal Courts, the court finds that these unnamed Defendants are due to be dismissed from this action. *See e.g. McAllister v. Henderson,* 698 F.Supp. 865, 869 (N.D.Ala.1988); *Weeks v. Benton,* 649 F.Supp. 1297, 1298 (S.D.Ala.1986).

Stephen D. Heininger, Birmingham, AL, Lexa E. Dowling, Dothan, AL, for Plaintiff.

Walter T. Gilmer, Jr., Jerry A. McDowell, McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant's Motion for Summary Judgment ("Def.'s Mot.Summ.J.")

and accompanying brief ("Def.'s Br."), filed May 18, 1998. Plaintiff responded in opposition ("Pl.'s Resp.") on June 2, 1998, to which Defendant replied ("Def.'s Reply") on June 12, 1998. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be granted.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441(c). The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## FACTUAL BACKGROUND

Plaintiff Ninnia M. Wiggins ("Wiggins") began working as a housekeeper for the Holiday Inn in Dothan, Alabama in February of 1989. On April 11, 1989, Plaintiff was injured on the job when she stood up, hit her back on a piece of counter/vanity top in the bathroom, and fell to her knee or knees.

Plaintiff's injuries resulting from this accident were initially described as acute lumbar strain and myositis (muscle inflammation). In September of 1989, Plaintiff began to see a new doctor, Dr. J.C. Serrato, Jr. ("Serra-

to"), who diagnosed Plaintiff as suffering from a strain and sprain of the spine (cervicodorsal and lumbosacral), with a superimposed psychogenic and psychosomatic personality, and myofascial syndrome. Serrato explained that myofascial syndrome is brought on primarily by trauma, in this case by Plaintiff's injury at work, and progresses from one part of the body to another, worsening with time. Serrato stated that Plaintiff would never fully recover from this disorder, but that women around the age of 55 generally become less symptomatic due to hormonal changes. Serrato also stated that myofascial syndrome is largely psychophysical in nature.

Plaintiff sought and received benefits for this injury from the workers' compensation carrier for Holiday Inn, the Home Insurance Company ("Home"). On October 15, 1990, Plaintiff settled her workers' compensation claim with Holiday Inn for a lump sum payment of $8,000.00. Future medical expenses were not included in the settlement, and Plaintiff continued to receive coverage for her injury-related medical needs until approximately April 17, 1996, when she was notified that she was no longer eligible for benefits.

In June, 1992, Plaintiff was involved in an automobile accident in which her car was struck from behind by a plumbing truck. Plaintiff was removed from the scene of the accident by ambulance and transported to the hospital. Her injuries as a result of the accident consisted of a strain and sprain of her spine, or "acute myofascial strain."

In 1995, Defendant Risk Enterprise Management Limited ("REM") entered into a claims management arrangement with Home in which it assumed certain administrative functions. In that capacity, Defendant began to handle Plaintiff's ongoing injury-related medical claims, and continued to make payments for Plaintiff's doctor, hospital, psychiatric, and pharmaceutical bills.

In November of 1995, Jennifer Dossey ("Dossey"), a claims representative for REM, became aware of Plaintiff's 1992 automobile accident and injury. Dossey initiated an investigation of the accident, and discontinued medical payments to Plaintiff until it was determined whether her current health problems were related to her original workers' compensation injury of the 1992 automobile accident injury. Dossey referred Plaintiff's file to Barbara Brewer ("Brewer"), R.N., C.R.N., an independent rehabilitation case manager from CorVel Corporation, in order to evaluate Plaintiff's physical condition. The file was also referred to the Special Investigations Unit of REM for further inquiry into the 1992 accident and Plaintiff's resultant injuries. Following these investigations, on April 17, 1996, REM notified Serrato that Plaintiff's treatment would no longer be paid for by workers' compensation.

Plaintiff filed suit in the Circuit Court of Houston County on July 7, 1997. The action was removed by Defendant on the basis of diversity jurisdiction on August 8, 1997. Plaintiff's Complaint ("Complaint") sought recovery under a number of theories. First, the Complaint alleged that Defendant had acted outrageously and had intentionally inflicted emotional anguish on Plaintiff when Defendant discontinued her workers' compensation coverage. Second, the Complaint alleged that Defendant had committed the tort of economic duress by attempting to force Plaintiff into a position such that she would not insist that Defendant live up to its contractual and legal obligations. Third, the Complaint alleged that Defendant breached its contract of insurance with Plaintiff's employer, and that Plaintiff, as a third-party beneficiary of that contract, had suffered mental anguish as a proximate result. Fourth, the Complaint alleged that Defendant had acted in bad faith in handling Plaintiff's claim, causing her economic loss and mental anguish. Fifth, the Complaint alleged that Defendant committed fraud, misrepresentation, and deceit by representing to Plaintiff that it would adhere to its contractual and legal obligations to pay Plaintiff's authorized and appropriate medical expenses. Finally, the Complaint alleged that Defendant had committed a prima facie tort by intentionally violating its contractual, legal and moral obligations to Plaintiff.

Defendant moved for partial judgment on the pleadings as to several of Plaintiff's claims on April 27, 1998, which Plaintiff did not oppose. The court granted this motion

on June 26, 1998. As a result, the only claims that currently remain in this case are Plaintiff's claims of outrage, breach of contract, and fraud/misrepresentation.

## DISCUSSION

### I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO PLAINTIFF'S OUTRAGE CLAIM

 The tort of outrage is founded on conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1980).[2] To establish the tort of outrage, a plaintiff must allege three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.*, 598 So.2d 835 (Ala.1992) (quoting *Perkins v. Dean*, 570 So.2d 1217, 1219 (Ala.1990)).

The Supreme Court of Alabama has summarized the exceedingly narrow scope of the tort as follows:

> [T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented... In fact, in the 12 years since *Inmon* was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials... 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insur-

ance claim... 3) a case involving egregious sexual harassment.

*Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).

 The tort of outrage has also been recognized as appropriate in certain circumstances where an individual was denied payment under workers' compensation.[3] *See Continental Cas. Ins. Co. v. McDonald*, 567 So.2d 1208 (Ala.1990). In *McDonald*, the insurance carrier engaged in a pattern of delays in paying its insured's claims. *Id.* at 1212. The plaintiff had suffered a back injury of such severity that his need for treatment was day to day. *Id.* There was evidence that the insurance company delayed payments in order to coerce the plaintiff into a settlement that was grossly inadequate to his needs. *Id.* There was also evidence that the delays in payment resulted in delays in treatment, and that the physical pain endured by the insured was seriously increased as a result. *Id.* at 1213. Moreover, the *McDonald* court makes several references to the plaintiff's possible addiction to narcotic pain killers as a direct result of Continental's actions. *Id.* at 1213, 1214. Thus, it appeared in *McDonald* that the company not only contested payments with no lawful reason, but also contested payments in a manner intended to cause pain and suffering to the insured, in order to coerce him into a settlement. *Id.* at 1220. Based on these particularly egregious facts, the Alabama Supreme Court held that the emotional distress alleged by the plaintiff was of the degree that met the *Inmon* standard. *Id.* at 1221.

The Alabama Supreme Court has described *McDonald* as "the minimum threshold that a defendant's conduct must cross in order for the defendant to be liable for outrageous conduct." *Ex Parte Crawford & Co.*, 693 So.2d 458, 460 (Ala.1997); *see also Gibbs v. Aetna Casualty & Surety Co.*, 604 So.2d

---

2. Plaintiff's Complaint also seeks recovery for "intentional infliction of mental anguish." (Def.'s Br. at 11 n. 2 (citing Compl. ¶ 2).) As Defendant correctly points out, however, the torts of outrage and intentional infliction of emotional distress are one and the same under Alabama law. *See, e.g., Stewart v. Matthews Indus., Inc.*, 644 So.2d 915, 918 (Ala.1994); *see also Ex Parte Jackson*, 485 So.2d 1116 (Ala.1986).

3. The court notes that the tort of outrage is not barred by the exclusivity provisions of the workers' compensation statute. *See Farley v. CNA Ins. Co.*, 576 So.2d 158, 159–60 (Ala.1991) (citing *Garvin v. Shewbart*, 442 So.2d 80 (Ala.1983)); *Lowman v. Piedmont Exec. Shirt Mfg. Co.*, 547 So.2d 90 (Ala.1989); *Continental Casualty Ins. Co. v. McDonald*, 567 So.2d 1208 (Ala.1990)).

414, 415 (Ala.1992). Since the *McDonald* case, in fact, the Alabama Supreme Court has repeatedly declined to find outrageous conduct within the context of the denial of workers' compensation benefits, consistently distinguishing *McDonald* on its facts. Many of these cases, in turn, had fact patterns that are similar to the facts of the matter now before the court.

For example, in *Wooley v. Shewbart,* the plaintiff sustained a hip injury when she fell while on the job. 569 So.2d 712, 713 (Ala. 1990). The plaintiff timely notified her employer, which in turn notified its insurance carrier. *Id.* at 714. An employee of the insurance carrier began to process the plaintiff's claim, but the plaintiff's file was then reassigned to a different employee (a claims supervisor) of the insurance carrier. *Id.* Before the plaintiff's claim file was assigned to the claims supervisor, the plaintiff had begun to receive periodic workers' compensation checks from the carrier, but after her claim was reassigned, the claims supervisor questioned whether the claim was a covered claim. *Id.* Eventually, the supervisor recommended that benefits be terminated and that Continental not pay for a scheduled hip operation. *Id.* The court stated that:

> The allegation in this case is simply that [the supervisor] denied [plaintiff's] claim with no arguable reason for doing so. He did not communicate that denial directly to [plaintiff] but sent a letter to her attorney. The only aspect of the denial that could conceivably be called outrageous is that it came shortly before [plaintiff's] scheduled surgery. That fact of timing is far from being " 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized society.' " *American Road Service Co. v. Inmon,* 394 So.2d 361, 368 (Ala.1980) (quoting Comment d, Restatement (Second) of Torts, § 46 at 73 (1948)). The evidence in this case is entirely unlike that in *Continental Casualty Ins. Co. v. McDonald,* from which the jury reasonably could have found that CNA had engaged over an extended time in an effort to coerce [the plaintiff] to settle his workmen's compensation benefits for an unfairly low lump-sum payment.

*Id.* at 717. Based on this reasoning, the court held that the trial court had erred in not granting the defendants' motion for summary judgment on the plaintiff's outrage claim. *Id.*

Similarly, in *Farley v. CNA Ins. Co.,* a stipulation for settlement had been executed by the parties that settled the indemnity portion of the plaintiff's claim in a workers' compensation case, with future medicals left open. 576 So.2d 158, 159 (Ala.1991). After the execution of this agreement, the plaintiff argued that the course of conduct of the defendant in handling her claim constituted outrageous conduct. *Id.* at 160. The court commented that the evidence indicated an "unsympathetic attitude on the part of [defendant] toward the claimant," but that this evidence did not rise to the level of outrageous conduct. *Id.* Although the evidence indicated that the plaintiff had been given "the runaround"—that her medical bills had not been timely paid, that she was sent to various doctors, and that the medical treatment which she sought was not always authorized—the court nevertheless held that this conduct did not cross the "threshold beyond which an insurance company's recalcitrance must go before it crosses into outrageous conduct." *Id.* at 160 (citing *McDonald,* 567 So.2d at 1216).

Finally, more recently, in *Ex Parte Crawford,* the parties had executed an agreement that settling the disability portion of the plaintiff's workers' compensation claim but leaving open future medical expenses. 693 So.2d at 458. The plaintiff in *Crawford* argued that, subsequent to the execution of this agreement, the defendant had been deliberately slow in paying his medical bills in an effort to get him to settle his claims for future medical benefits. *Id.* at 459. Further, the plaintiff argued that the defendant was fully aware of the plaintiff's frustration with its delay in paying his medical bills. *Id.* The court found that, based on "the evidence adduced in this present case, reasonable people could conclude that [defendant's] conduct was intended to cause [plaintiff] emotional distress." *Id.* at 461. Nevertheless, the court held that:

Although [plaintiff] may have offered sufficient evidence of the first element of the tort of outrage, it is clear that the conduct of [defendant] is far from being "beyond all possible bounds of decency" and "utterly intolerable in a civilized society." [Plaintiff] has not alleged or presented evidence of facts that would meet the *Inmon* standards.

*Id.* at 461.

■ Turning to this case, Defendant argues that it has "done nothing more than insist upon its legal rights" in this case, and that its conduct has clearly not gone "beyond all possible bounds of decency" so as to be "utterly intolerable in a civilized society." (Def.'s Br. at 14, 19 (citing *Ex parte Lumbermen's Underwriting Alliance*, 662 So.2d 1133, 1136 (Ala.1995); *Ex Parte Crawford & Co.*, 693 So.2d at 459); *see also McDonald*, 567 So.2d at 1216.) In response, Plaintiff argues that there is "no medical evidence to refute the authorized physician's opinion and treatment plan." (Pl.'s Resp. at 7.) In essence, Plaintiff argues that Defendant has made the decision to terminate Plaintiff's benefits with no arguable medical reason to do so. (*See* Pl.'s Resp. at 7–9.)

Specifically, Plaintiff cites the evidence presented by Dr. Serrato. During the course of the investigation that was conducted by Defendant into the 1992 accident, Serrato wrote a letter that indicated that Plaintiff's injuries from the 1992 accident had been superimposed over her 1989 workers' compensation injuries. (January 24, 1996 letter of Dr. Serrato ("Serrato Letter"), Ex. 4 to Pl.'s Resp., at 1.) Serrato further indicated that he felt that Plaintiff had just about reached maximum improvement, in terms of recovery from the 1992 accident, in July of 1993. (*Id.*) At that point, Serrato indicated that he felt that Plaintiff was back to her pre–1992 status, and that her treatment from that point forward would be primarily related to Plaintiff's 1989 workers' compensation injury. (*Id.* at 1–2.) Plaintiff maintains that Serrato's opinion is uncontroverted by any

evidence, that Defendant has therefore wrongfully terminated Plaintiff's benefits, and that this conduct amount to outrageous conduct for which Defendant is liable. (Pl.'s Resp. at 5–9.)

Defendant responds, however, that the medical evidence on which it based its decision was unclear as to whether Plaintiff's medical needs after the 1992 accident were primarily related to that incident or her original 1989 workers' compensation injury. (*See* Def.'s Reply at 7–14.) Specifically, Defendant points out that Serrato used precatory language in his letter, stating that he "felt" that Plaintiff's treatment from July, 1993 forward would be primarily related to her 1989 injury, and that "apparently" her problems were resolved. (Def.'s Reply at 7–8.) [4] Moreover, Defendant cites references, in Serrato's notes, that refer solely to the 1992 accident when discussing Plaintiff's office visits and treatment needs. (*See* Def.'s Reply at 9–10; Ex. A. to Def.'s Reply.) These records are dated between August 25, 1992 and July 17, 1995. (*See* Def.'s Reply at 9–10; Ex. A. to Def.'s Reply.) Thus, Serrato was relating Plaintiff's injuries solely to the 1992 accident even after the period in time (July, 1993) that he states that she was back to her pre-accident (i.e.1989 injury) status. (*See* Serrato Letter.) Based on this evidence, the court finds that Defendant had at least an arguable basis for discontinuing Plaintiff's medical benefits.

Even assuming that all of Plaintiff's contentions are true, however, and Defendant made its decision to terminate Plaintiff's benefits contrary to the relevant medical evidence, the court finds that Plaintiff's claim of outrage fails. As stated above, there must be evidence, viewed in a light most favorable to Plaintiff, supporting each of the elements of the tort of outrage, in order to survive summary judgment. Plaintiff must be able to establish that "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was like-

4. Serrato also indicated that Plaintiff's treatment needs were primarily back to dealing with her psychological factors after July, 1993. (Serrato Letter at 2.) The court notes that it is unclear from the evidence exactly how Plaintiff's psychological treatment needs were ever related to her

workers' compensation injury of 1989, although Plaintiff's employer and insurance carrier historically covered these medical expenses on behalf of Plaintiff. (*See* Pl.'s Resp. and exhibits thereto; *see also* Def.'s Br. and exhibits thereto.)

ly to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore*, 598 So.2d at 836. Here, under the standards articulated by the Alabama Supreme Court, Plaintiff fails to establish any of these elements.

First, Plaintiff has produced no evidence indicating that Defendant intended to inflict emotional distress on Plaintiff. *Moore*, 598 So.2d at 836. Even if Defendant was not justified in terminating Plaintiff's benefits, this single fact does not lead to an inference of intent or improper motive. *See Gibbs*, 604 So.2d at 417 (holding that plaintiff had not produced evidence of intent or improper motive). In *McDonald*, where such an inference was clearly justified, the defendant had delayed the payment of benefits for extended periods of time, resulting in the plaintiff having to fight with the creditors of the medical service providers. *See, e.g., McDonald*, 567 So.2d at 1212–17. Moreover, the defendant had done so with full knowledge of the extreme pain and suffering which the plaintiff was enduring and with the intent to coerce the plaintiff into settling. *See id.* Here, Defendant was concerned not with coercing Plaintiff to settle by using delay tactics with knowledge of Plaintiff's ensuing suffering; rather, Defendant merely made a one-time decision to stop providing benefits and notified Plaintiff's doctor of its decision.

As stated in *Inmon*, to meet this first prong of the tort of outrage, a defendant's conduct must be "so outrageous as to equate [with] willfulness." *Inmon*, 394 So.2d at 365. Applying this standard in *Inmon*, the Alabama Supreme Court reversed the trial court's judgment for the plaintiff and found no evidence of intent despite testimony that the plaintiff had been "harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification." *Id.* at 368. In addition, in *Gibbs v. Aetna Cas. & Surety Co.*, the Alabama Supreme Court affirmed summary judgment against a worker who claimed his employer's workers' compensation carrier had engaged in outrageous con-

duct by: (1) paying the worker less weekly compensation than the carrier knew he was due, before reaching any settlement; (2) refusing him further medical treatment and requiring him to travel, even though the carrier knew he was in severe pain; (3) delaying reimbursement of his drug bills. 698 So.2d at 416. The court held that although the worker may have been inconvenienced by the alleged conduct, he had failed to show that the workers' compensation carrier had intended to cause him severe emotional distress. *Id.* at 416. Thus, the carrier's alleged actions fell substantially short of conduct that was "atrocious, and utterly intolerable in a civilized [society]." *Id.* at 417. The court again emphasizes that Defendant's arguably mistaken decision to cease payment of Plaintiff's medical expenses, in itself, provides no evidence of intent to support Plaintiff's outrage claim.[5]

Further, the court finds that Plaintiff has failed to establish that Defendant "knew or should have known" that its actions would result in severe emotional distress to Plaintiff. *See Moore*, 598 So.2d at 836. Although Defendant would reasonably be expected to realize that its decision to terminate Plaintiff's benefits would be unwelcome, and although Defendant would reasonably be expected to realize that Plaintiff would be unhappy with the decision, there is no evidence from which a jury could infer that Defendant should have known that its actions would result in severe emotional distress. *See id.* Once again, the court notes that such an inference was justified in *McDonald*, but that the egregious conduct at issue therein is far removed from the conduct at issue in this case.

Even if, however, there existed sufficient evidence to infer that Defendant "should have known" that emotional distress was likely to result from its conduct, the court also finds that Plaintiff has failed to produce evidence of the "extreme and outrageous" nature of conduct or the severity of her

---

5. In addition, the court's notes that Defendant's discussion of the *Wooley* case is also persuasive. As set forth above, the *Wooley* court stated that "the allegation in this case is simply that [defendant] denied [plaintiff's] claim with no arguable reason for so doing." *Wooley*, 569 So.2d at 717. The court went on to hold that the trial court had erred by not granting summary judgment for defendant on the outrage claim. Here, the allegation made by Plaintiff is identical.

emotional distress. *See Moore,* 598 So.2d at 836.

Unlike *McDonald,* where the Alabama Supreme Court found extreme and outrageous conduct, here the Plaintiff—not the Defendant—raised the issue of settlement of Plaintiff's medical claims. After Plaintiff initiated an offer to which Defendant responded with a lower counter-offer, neither party further attempted to pursue settlement of her claim for future medical benefits. (Ex. 2 to Def.'s Reply.) Moreover, Plaintiff neither argues nor produces evidence that any of Defendant's actions were taken in an attempt to force her into settling her claim. Thus, unlike the facts of *McDonald* set forth above, wherein a consistent pattern of conduct and dilatory tactics was apparent, here there is no inference, evidence, or allegation that Defendant acted on an arguably incorrect decision for purposes of coercion. *See McDonald,* 567 So.2d at 1212–20.

In *House v. Corporate Services, Inc.,* this court faced a claim of outrage arising from circumstances similar to those at issue in this case. 882 F.Supp. 161 (M.D.Ala.1995) (DeMent, J.). The plaintiff in *House* had executed an agreement with the defendants to settle all portions of her workers' compensation claim with the exception of her claim for future medical expenses. *House,* 882 F.Supp. at 162. Subsequent to this agreement, the defendants refused to authorize certain medical procedures and costs with no arguable justification for their refusal. *Id.* at 162–63. The court commented that the plaintiff's contentions included several noteworthy features, such as "seven [unpaid] medical bills; [defendants'] failure to approve an overnight stay in a hospital after a myelogram had been performed; numerous requests for payment of medical bills and two motions to compel [defendants] to honor their commitment." *Id.* at 165. Despite this evidence, this court found that, "based on *Inmon* and its progeny, [defendants'] conduct may not be legally characterized as 'atrocious and utterly intolerable in a civilized society' which transcends all bounds of decency." *Id.*[6] Again, the court notes that in this case, a single decision, even if unjustified, does not provide the consistent pattern of egregious circumstances necessary for conduct to rise to the level of outrageous conduct, as contemplated by *Inmon* and its progeny.

Finally, the court finds that Plaintiff has not produced any evidence of her severe emotional distress, nor can such distress be inferred under the present facts. Plaintiff appears to argue that Plaintiff's distress can be inferred from the evidence, as Defendant "knew of the chronic pain and psychological condition of plaintiff." (Pl.'s Resp. at 8.) Plaintiff does not argue that Plaintiff was, in fact, severely emotionally distressed under the instant facts.[7] The court finds that this knowledge of Plaintiff's condition, standing alone, does not support an inference of severe mental distress. *Cf. McDonald,* 567 So.2d at 1212–15 (detailing the plaintiff's severe pain and emotional distress which had been made apparent to the defendant over a lengthy period of time).[8]

Based on the foregoing, the court finds that Plaintiff has produced insufficient evidence to support any of the elements of the tort of outrage, and that Defendant's conduct in this case falls far short of that which "no

---

**6.** In reaching its conclusion, the court discussed and distinguished *National Sec. Fire & Cas. Co. v. Bowen,* 447 So.2d 133 (Ala.1983), the case cited by the Alabama Supreme Court as representative of the tort of outrage in the insurance context in *Thomas,* 624 So.2d at 1044. *See House,* 882 F.Supp. at 165 n. 4.

**7.** Of course, Plaintiff alleges in her complaint that she "has been caused to suffer extreme mental anguish." (Compl. at ¶ 2(f).) Apart from this bare allegation, however, she presents no evidence or testimony regarding her alleged mental anguish.

**8.** The court again notes that the facts of McDonald on which the Alabama Supreme Court based its holding are distinct from this case. In *McDonald,* the plaintiff's distress was well documented in the record and had been specifically communicated to the defendant. *See McDonald,* 567 So.2d at 1212–15. The pain and accompanying mental trauma mounted over an extended period of time, during which the plaintiff fought addiction to his pain medication and communicated this fact to the defendant. *Id.* In light of these facts, the court held that "[t]he evidence recited above is sufficient to show that the jury could have found that (plaintiff) suffered severe emotional distress." *Id.* at 1219. No such evidence or pattern of conduct exists in this case.

reasonable person could be expected to endure." *Inmon*, 394 So.2d at 365. Thus, Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's claim of outrageous conduct.[9]

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS DUE TO BE GRANTED AS TO PLAINTIFF'S BREACH OF CONTRACT AND FRAUD/MISREPRESENTATION CLAIMS

Defendant has moved for summary judgment as to each of Plaintiff's claims, (*see* Def.'s Mot.Summ.J.; Def.'s Br. at 20–25), and has fully set forth the arguments, evidence, and supporting case law on which its Motion is founded. (*See* Def.'s Mot.Summ.J.; Def.'s Br. at 20–25.) Plaintiff, however, in opposing Defendant's Motion for Summary Judgment, focuses exclusively on her outrage claim. As set forth previously, Plaintiff bears the burden of production as the non-moving party on summary judgment after Defendant has met its initial burden of persuasion under Rule 56(c). Plaintiff must, at that point, "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e). Plaintiff has failed to carry this burden as to her misrepresentation and breach of contract claims.

### A. FRAUD/MISREPRESENTATION

■ Although Plaintiff does mention fraud when she states that "[t]he Supreme Court of Alabama has recognized that employees may have a cause of action for fraud and/or outrageous conduct which are not excluded by [the worker's compensation act]," (Pl.'s Resp. at 6), and that "[t]he conduct that has been shown in the facts of this case is the reason there is a remedy for fraud and/or outrage in a workman's compensation setting," (*id.* at 9), Plaintiff frames her entire argument to address outrage. Presumably, Plaintiff is proceeding under her original theory that "[Defendant has] committed fraud ... by

representing that [it] would adhere to [its] contractual and legal obligations to pay Plaintiff's authorized and appropriate medical expenses." (Compl. at ¶ 6.) Plaintiff has brought forth no evidence in support of this allegation in her Response, however, but rests solely on her original pleading. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *See also* Fed.R.Civ.P. 56(e).

■ The elements that Plaintiff must establish in order to support a claim for fraud or misrepresentation under Alabama law are "1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 422 (Ala.1997) (citing Ala.Code § 6–5–101 (1975); *Harrington v. Johnson–Rast & Hays Co.*, 577 So.2d 437 (Ala.1991)).

■ In addition, because the alleged fraud consists of a promise to perform future acts, Plaintiff must also establish that Defendant had a present intent to deceive at the time that the alleged promise was made. *See First Bank of Boaz v. Fielder*, 590 So.2d 893, 897 (Ala.1991). In *First Bank of Boaz v. Fielder*, the Alabama Supreme Court addressed the nature of this variety of fraud, known as promissory fraud, stating that:

> [t]he only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future ... is when the evidence shows that, at the time ... the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive.

*Id.* at 897 (citing *Watters v. Lawrence County*, 551 So.2d 1011, 1014 (Ala.1989); *Hearing Systems, Inc. v. Chandler*, 512 So.2d 84, 87 (Ala.1987); *Robinson v. Allstate Insurance Company*, 399 So.2d 288 (Ala.1981)).

Defendant argues that it was "impossible for REM to have made *any* misrepresenta-

---

9. The court specifically notes that its findings in this Memorandum Opinion and Order do not have any relevance as to the fictitious parties whom the court has dismissed from this action. *See supra* n. 1.

tions or false promises to the plaintiff in 1990 regarding the future payment of her medical bills, with a then present intent to deceive her" because Defendant did not attempt to administer Plaintiff's claims until 1995. (Def.'s Br. at 21 (emphasis in original).) In addition, Defendant cites Plaintiff's deposition testimony, which indicates that she understood that her medical payments would only extend to injuries related to her 1989 workers' compensation injury, and that she did not know of "any representation made to [her] by anybody ... that were false in any way." (*Id.* at 22–23.) As a result, Defendant argues that there is no evidence that Defendant made a misrepresentation to Plaintiff upon which she relied, or that Defendant had a present intent to deceive the Plaintiff at the time any alleged misrepresentations were made. (*Id.* at 23.)

As stated, Plaintiff does not respond to Defendant's arguments, but rather focuses entirely on the tort of outrage in her Response. Thus, Plaintiff presents no evidence or argument regarding the alleged misrepresentations, their materiality, her reliance, her proximate injuries, or Defendant's intent to deceive. *See, e.g., Foremost,* 693 So.2d at 422; *Fielder,* 590 So.2d at 897. Accordingly, based on the arguments and evidence set forth by Defendant, the court finds that Plaintiff is unable to establish the elements of her misrepresentation claim, and that Defendant's Motion for Summary Judgment is due to be granted as to this claim.

## B. BREACH OF CONTRACT

■ Turning to Plaintiff's breach of contract claim, the court notes that Plaintiff fails to even mention this claim in her Response. The only point at which a reference to this claim can even be inferred is at the close of Plaintiff's Response, where she "urges the Court to overrule [Defendant's Motion for Summary Judgment] in its entirety." (Pl.'s Resp. at 9.) Again, the court emphasizes that, in responding to Defendant's Motion, Plaintiff was required to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

■ A breach of contract under Alabama law "consists of the failure without legal excuse to perform any promise forming the whole or part of the contract. Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do." *Seybold v. Magnolia Land Co.,* 376 So.2d 1083, 1085 (Ala.1979) (citations omitted). In order to prove her breach of contract claim, Plaintiff must establish (1) the existence of a valid contract between Plaintiff and Defendant, (2) her own performance under the contract, (3) Defendant's nonperformance, and (4) damages. *Southern Medical Health Systems, Inc. v. Vaughn,* 669 So.2d 98, 99 (Ala.1995) (citing *McGinney v. Jackson,* 575 So.2d 1070, 1071–72 (Ala.1991); *Seybold v. Magnolia Land Co.,* 376 So.2d 1083, 1085 (Ala.1979); *Hanby v. Campbell,* 222 Ala. 420, 132 So. 893, 894 (1931)).

Plaintiff's Complaint alleges that "[Defendant has] breached [its] contract of insurance with Plaintiff's employer" by denying Plaintiff further medical benefits. (Compl.¶ 4.) In its Brief in Support of Summary Judgment, Defendant argues that there exists no evidence that it had a "contract of insurance" with Plaintiff's employer. (Def.'s Br. at 24.) Rather, Defendant contends that it merely provided administrative services to the Home Insurance Company in connection with the workers' compensation claims that Home handled for Plaintiff's employer, Holiday Inn. (*Id.*) Defendant points out that "Home is the workers' compensation carrier for Holiday Inn, not REM." (*Id.*) As a result, Defendant argues that it "has no contractual relationship of any kind with the plaintiff or Holiday Inn." (*Id.* at 25.)

As stated, Plaintiff has provided neither proof nor argument regarding any of the alleged contractual relationships in this case in her Response. Plaintiff has not argued, for example, that Defendant was bound by any contract that may have existed between Home and Holiday Inn. Plaintiff has not argued that Defendant had any form of direct contractual relationship with Holiday Inn apart from any contract that may have existed between Home and Holiday Inn. In

fact, Plaintiff has advanced no evidence regarding any contractual relationship to contradict Defendant's characterization of its relationship with Home solely as an administrative servicer of claims.

Thus, based on the arguments and evidence set forth by Defendant, the court finds that Plaintiff is unable to establish the elements of her breach of contract claim. Accordingly, the court finds that Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's claim for breach of contract.

### ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED that Defendant's Motion for Summary Judgment be and the same is hereby GRANTED.